714 A.2d 282

COMMUNITY REALTY MANAGEMENT, INC., FOR WRIGHTS-
TOWN ARMS APARTMENTS, PLAINTIFF–RESPONDENT,
v. NEDRA HARRIS, DEFENDANT–APPELLANT.

Argued January 5, 1998—Decided July 20, 1998.

*Larry D. DeCosta,* Supervising Attorney, Camden Regional Legal Services, Inc., argued the cause for appellant.

*Robert P. Weishoff* argued the cause for respondent (*Mr. Weishoff,* attorney; *Michael S. Rothmel,* of counsel and on the brief).

*Melville D. Miller, Jr.,* argued the cause for *amicus curiae,* Legal Services of New Jersey, Inc. (*Mr. Miller* President, attorney; *Mr. Miller* and *Joseph Harris David,* on the brief).

COLEMAN, J.

This appeal involves summary proceedings to dispossess a tenant for non-payment of rent. The appeal focuses on the adequacy of procedures to protect *pro se* tenants. Two significant issues raised are whether the trial court abused its discretion in failing to vacate a consent judgment for possession pursuant to *Morristown v. Little,* 135 *N.J.* 274, 639 *A.*2d 286 (1994), and whether Burlington County's summary dispossess procedures adequately protect *pro se* tenants.

The trial court refused to vacate the judgment for possession and the Appellate Division affirmed in an unreported decision. We granted certification, 151 *N.J.* 74, 697 *A.*2d 546 (1997), and now reverse.

I

Defendant Nedra Harris resides in Wrightstown Arms Apartments, a Section 8 housing development constructed under the

National Housing Act, 42 *U.S.C.A.* § 1437, to provide low-income housing. As the owner, Community Realty Management, Inc. (Community) receives federal subsidies enabling it to provide housing at reduced rents, but obligating it to comply with federal housing regulations.

Harris rents an apartment at Wrightstown Arms where she resides with her two minor children. She entered into a lease with Community for a term commencing April 19, 1993 and terminating March 31, 1994. Although Harris and Community did not execute a new lease at the expiration of the one year term, the original lease provided that "after the initial term ends, the Agreement will continue for successive terms of one month each unless automatically terminated as permitted by paragraph 23 of this Agreement." Thus, Harris remained in the apartment as a month-to-month tenant under the same terms of the original lease.

When Harris failed to pay her monthly rent of $133 on June 1, 1995, Community served Harris with a Notice to Quit. The Notice stated that Harris's tenancy was terminated effective June 22, 1995, and advised her that Community would seek eviction proceedings if she remained in the premises after June 22. On June 20, 1995, Community received a letter from Harris stating that she would be unable to pay her rent until Friday, June 23, 1995. On June 22, 1995, Community nonetheless filed a complaint for summary dispossess for non-payment of rent based on *N.J.S.A.* 2A:18–61.1a. The complaint alleged $236.50 in back rent, representing $133 for June rent, $31 in prior late charges, $30 in late charges for non-payment of June rent, $17.50 in damages, and $25 in contract costs. The complaint also requested $125 in attorney's fees and $18 in court costs for a total of $379.50.

On July 14, 1995, the return date of the summary dispossess proceeding, Harris appeared in court without the assistance of an attorney. The trial court gave the following general instructions to litigants prior to the docket call:

> I should explain to you, ladies and gentlemen, that the procedure will be I will call the list and then we will take a recess so that the cases where both parties are

present there will be an opportunity for the folks to speak with one another and then we'll recall the list to see which matters actually have to be tried and then try them.

After I finish calling the list I will explain the principles in a general way that apply to the landlord and tenant law. . . .

Following the docket call, the court gave further instructions regarding non-payment cases:

In the case of nonpayment of rent the legislature has said that the tenant must pay the rent on time and in full, and if the tenant doesn't the landlord's entitled to a judgment for possession.

It's important for you to realize that we're all adults here, and we realize when rent is not paid usually it's because a person has run into a difficult situation. . . . So, there's no moral criticism or we're not saying people are bad persons, but on the other hand, I have no choice but to enter a judgment for possession.

The court also informed the tenants that

Some folks may be in a position where certain agencies may be able to provide assistance, and through the Department of Consumer Affairs ... there are representatives from both the Welfare Board and emergency services who can talk to people who may feel ... that they may be qualified for some assistance.

Thereafter, the court recessed. During the recess, Harris informed Community's attorney, Robert Weishoff, that she was unable to pay the back-due monies. Weishoff, in turn, informed the court clerk who entered a judgment for possession. Harris told the clerk she would make the full payment within eleven days. Eleven days later, on July 25, Harris paid the $379.50 demanded in the complaint as well as July rent of $133 plus $109 in late charges, totaling $621.50. She then signed a consent agreement staying the issuance of a warrant for removal until December 31, 1995. The agreement was a hardship stay pursuant to *N.J.S.A.* 2A:42-10.6.

On November 3, 1995, Community sent Harris a letter stating: "On July 25, 1995 through the Burlington County Superior Court of New Jersey a consent order was entered staying the order of removal until December 31, 1995. This letter is a reminder that per that order on December 31, 1995 you are to vacate the premises." When Harris failed to vacate the apartment by December 31, 1995, Community obtained a warrant for her removal on January 3, 1996, with an execution date of January 12, 1996.

Represented by counsel for the first time, Harris filed an order to show cause, seeking to vacate the judgment for possession.

The trial court conducted an evidentiary hearing on January 12, 1996. At the hearing, Harris testified that she spoke with Weishoff at the summary dispossess proceedings while the court was in recess. Although Weishoff did not remember speaking with Harris, he stated in an unsworn statement that he always follows the same procedure. First, he calls the tenants who are present to counsel's table. Then, he informs them that if they pay the money they owe by 4:30 p.m., their cases will be dismissed. He also informs the tenants that if they do not have the money they owe, they can attempt to negotiate a deal with the landlord and memorialize their agreement in writing. In particular, he stated that he advises tenants to utilize the form consent order promulgated by the Burlington County Court, a copy of which has not been provided to us.

Weishoff also stated that he tells tenants that if they are unable to pay and are not able to negotiate an agreement with the landlord, they will have eleven days to post the rent before a lockout. In response to the trial court's requested explanation of the meaning of a lockout, Weishoff explained that a lockout occurs when a judgment for possession has been entered and a landlord petitions the court for a warrant of removal. The Special Civil Part then gives the warrant to a constable who serves it on the tenant. Seventy-two hours later, the constable is directed to lock out the tenant.

Weishoff also stated that he informs tenants that they may be eligible to receive funds from public agencies. He stated that he explains the terms of a hardship stay to tenants, including that all back monies must be paid, all future rent must be paid on the first calendar day of the month, the landlord's property may not be destroyed, and the tenant may not disturb the peace and quiet of the neighborhood. Finally, Weishoff stated that he calls each tenant over to counsel's table individually and informs the tenant of the amount he or she owes, including late charges. He then

asks the tenant if he or she has the money at that time. If the tenant says no, he tells the tenant that the landlord will take a judgment for possession that day.

Describing her recollection of the conversation with Weishoff, Harris stated, "I told him I didn't have all the money right then and there. He said I have eleven days to get it—to get it together so I left." Harris stated that she gave her name to the court clerk indicating that she would make payment within eleven days. Thereafter, the court clerk noted a judgment for possession by writing "7–14–95–J" on the court list.

Harris also explained that on July 25, 1995, eleven days after the judgment for possession was entered by the clerk, she went to the clerk's office to remit payment. It is undisputed that while Harris was there, the clerk called Weishoff's office to determine the amount due. Weishoff's paralegal informed the clerk that Harris owed $621.50 as of that day, representing an additional $242 that included Harris's July rent of $133 plus $109 late fees for June and July. Harris paid the $621.50 and received a receipt. The receipt given by the court clerk informed Harris to go to Weishoff's office to sign a consent agreement staying the warrant of removal.

Harris went to Weishoff's office and met with a paralegal, Denise Yanzuk, who regularly prepares hardship stays. Yanzuk prepared Harris's consent order to stay the warrant of removal. At trial, Yanzuk testified that when a tenant comes into the office she normally shows the order to the tenant and goes "through paragraph by paragraph and, basically, read[s] it to them or explain[s] each paragraph." Additionally, Yanzuk, explained that when a tenant asks about what happens at the end of a hardship stay, she responds that "they're on a order to—a court order to pay the rent and at the end of the stay they'll go back on their normal lease unless they are notified otherwise by the complex." When asked whether she told Harris that she would go back on her lease at the end of the stay period, Yanzuk stated, "[n]o, I

would not say you will go back on your lease. I don't have the authority to say that."

Based on her conversation with Yanzuk, Harris testified that she believed that once six months had passed under the stay and she had met all the required conditions thereunder, her probationary period would be up and she would be able to remain in the apartment. Accordingly, she signed the consent order staying the warrant of removal until December 31, 1995. The trial judge and Weishoff also signed the order.

At the conclusion of the evidentiary hearing, the trial court refused to vacate the judgment for possession; the court did, however, stay the warrant of removal until March 1, 1996. Based in part on the trial judge's personal knowledge of eviction proceedings rather than on the record in this case, the court concluded that the Landlord/Tenant Court adequately informs tenants of their right to pay monies owed by 4:30 p.m. The trial judge stated:

> I've heard it myself. The Court says to everybody who's sitting there, if you don't have the money by 4:30 today a judgment for possession will be entered. And I'm satisfied after having heard the argument that the procedure under these circumstances is adequate to protect the rights of the tenant if the tenant's paying attention.... And I find as a fact that [Harris] understood that day that she did not have all that was due and that the Court did inform those people present that the money would have to be paid by 4:30 [p.m.] or a judgment would be entered.

The trial court further found that the terms of the July 25 consent order were clear. Therefore, the court concluded that Harris should have understood that the order merely stayed the warrant of removal, neither renewing her lease nor permitting her to remain in the premises. Furthermore, the court determined that *Little, supra,* was inapplicable to Harris's case because to find otherwise "would in effect be characterizing every low-income family as 'exceptional' to trigger the operation of *Rule* 4:50-1." Moreover, the court noted that Community is not a public housing authority and to apply *Little* in this case "would be simply to say that the Supreme Court has told landlords that if you grant a hardship stay to a tenant who is a low income person where the rent is being somehow subsidized ... you are stuck with that tenant for as long as you own the building."

Harris appealed, and the Appellate Division stayed the warrant of removal pending disposition of the appeal. On September 30, 1996, the Appellate Division affirmed in an unpublished opinion. The panel concluded that *Rule* 4:42–1(d) allows settlement of litigation by the entry of a consent judgment. Although the panel recognized that that procedure presents certain risks for *pro se* tenants, the court concluded that those risks do not warrant placing every *pro se* settlement on the record. The court also found that Community was not required to present evidence that the rent was unpaid, due, and owing before the trial court could enter a consent judgment in a summary dispossess action.

The Appellate Division further concluded that although the Tenant Hardship Act, *N.J.S.A.* 2A:42–10.6, grants the trial court the power to stay an eviction for up to six months, the statute has not been interpreted to restrict the court's power to grant further relief pursuant to *Rule* 4:50–1(f) in exceptional circumstances. The Appellate Division found that the facts that Harris has two children, ages five and six, works and earns $123 every fifteen days, and receives $371 in welfare do not satisfy the exceptional circumstance requirement of *Rule* 4:50–1(f) because there are many households that fall within those circumstances.

On October 4, 1996, a warrant of removal was issued with an execution date of October 10, 1996. On October 8, 1996, Camden Regional Legal Services filed a petition for certification on behalf of Harris. On October 10, 1996, the Appellate Division stayed the judgment and warrant of removal pending disposition of the petition that was granted July 11, 1997. Consequently, the warrant has not been executed.

## II

Harris and amicus, Legal Services of New Jersey, argue that Burlington County Landlord/Tenant Court's eviction procedures violate the law and are unfair to *pro se* tenants. Specifically, Harris asserts that the eviction proceedings are contrary to the law because (1) landlords do not have to plead and prove "good

cause," a requirement for eviction under the Anti–Eviction Act, *N.J.S.A.* 2A:18–61.1, or provide an affidavit to evict *pro se* tenants; (2) the court permits judgments for possession to be entered without first requiring the landlord to establish the court's jurisdiction; (3) the court does not require the submission of a form of judgment or order containing "the recital that all parties have in fact consented to the entry of judgment or order in the form submitted" as required by *Rule* 4:42–1(d) and (e); and (4) the court clerk enters judgments for possession against *pro se* tenants without an affidavit required by *Rule* 6:6–3(b).

Harris also argues that the court's procedures are inherently unfair to *pro se* tenants. First, Harris contends that at the eviction proceeding on July 14, 1995, the court failed to inform tenants that they had until 4:30 p.m. that day to pay the landlord all rent due and owing. Second, the court permits the landlord's attorney to explain court procedures and the meaning of court terms to *pro se* tenants. Third, the court clerk directs *pro se* tenants to go to the office of their adversary and sign consent orders regarding stays of warrants of removal. Harris maintains that it is unfair for the clerk not to explain to *pro se* tenants that they have a right to apply for relief from the judgment for possession.

Harris insists that because she did not understand the meaning of the terms "judgment for possession" or "hardship stay" she could not have consented to a judgment. Even assuming there was some degree of consent, Harris urges this Court to invalidate the judgment because Weishoff incorrectly advised her regarding the amount necessary to avoid a judgment for possession. Finally, Harris argues that the judgment for possession entered against her was invalid and that the lower courts erred in refusing to vacate the judgment for possession under *Little*.

In response, Community alleges that it acted in good faith and complied with all applicable regulations when evicting Harris. Community rejects defendant's argument that Weishoff improperly instructed Harris regarding the amount due and maintains that

all the fees and charges demanded in its complaint were proper. Additionally, Community argues that the consent judgment for possession was proper because Harris fully understood her rights and chose to seek a hardship stay. Community maintains that Harris's situation is unexceptional and distinguishable from the circumstances in *Little*.

## III

The current summary dispossess procedures allow a landlord to obtain a judgment for possession in three ways: (1) by default judgment, *R.* 6:6–3(b); (2) by judicial decree after a trial, *R.* 6:6–4; or (3) by consent, *R.* 4:42–1(d), made applicable to the Special Civil Part by *Rule* 6:6–1.

As noted previously, the present case involves two consent judgments. A consent judgment has been characterized as being

> both a contract and a judgment[;] it is not strictly a judicial decree, but rather in the nature of a contract entered into with the solemn sanction of the court. A consent judgment has been defined as an agreement of the parties under the sanction of the court as to what the decision shall be. *Fidelity Union Trust Co. v. Union Cemetery Ass'n*, 136 *N.J. Eq.* 15, 25–26 [40 *A.*2d 205] (Ch.1944), *aff'd orb.* 137 *N.J. Eq.* 455 [45 *A.*2d 670] (E. & A.1946). A consent judgment has equal adjudicative effect as one entered after trial or other judicial determination. *Pope v. Kingsley*, 40 *N.J.* 168, 173 [191 *A.*2d 33] (1963). As such, a consent judgment may only be vacated in accordance with *R.* 4:50–1. *Middlesex Concrete, etc., Corp. v. Carteret*, 35 *N.J.Super.* 226, 235 [113 *A.*2d 821] (App.Div.1955); *Stawicky v. Stawicky*, 12 *N.J.Super.* 72, 78–79 [79 *A.*2d 72] (App.Div.1951).
>
> [*Stonehurst at Freehold v. Township Comm. of Freehold*, 139 *N.J.Super.* 311, 313, 353 *A.*2d 560 (Law Div.1976).]

Thus, for a consent judgment to be valid, like a contract, the parties' consent must be knowing and informed. *Johnson & Johnson v. Charmley Drug Co.*, 11 *N.J.* 526, 538–39, 95 *A.*2d 391 (1953). There must be the proverbial "meeting of the minds." In the area of landlord/tenant law, when a question arises concerning the validity of an agreement between landlord and tenant, trial courts are directed to "generally favor the tenant rather than the landlord." *Carteret Properties v. Variety Donuts, Inc.*, 49 *N.J.*

116, 127, 228 *A.*2d 674 (1967) (citations omitted); *see 447 Associates v. Miranda,* 115 *N.J.* 522, 529, 559 *A.*2d 1362 (1989) (stating courts should liberally construe Anti–Eviction Act and utilize it to ensure that evictions are based on reasonable grounds); *see also Jijon v. Custodio,* 251 *N.J.Super.* 370, 372, 598 *A.*2d 251 (Law Div.1991) (stating Anti–Eviction Act should be liberally construed and all doubts resolved in tenant's favor). In addition, the "entry of a consent judgment is inappropriate and the judgment itself is unenforceable when the agreement it encompasses or the relief it grants is illegal." *First National State Bank v. Gray,* 232 *N.J.Super.* 368, 372, 556 *A.*2d 1334 (Law Div.1989), *overruled on other grounds by State v. Cruse,* 275 *N.J.Super.* 324, 646 *A.*2d 437 (App.Div.1994); *Stonehurst, supra,* 139 *N.J.Super.* at 314, 353 *A.*2d 560; *Midtown Properties, Inc. v. Township of Madison,* 68 *N.J.Super.* 197, 206–08, 172 *A.*2d 40 (Law Div.1961), *aff'd,* 78 *N.J.Super.* 471, 189 *A.*2d 226 (App.Div.1963). When the foregoing principles are applied to the present case, the two consent judgments are problematic in several respects.

-A-

First, we address whether the consent judgment for possession complied with the required court procedures. When defendant admitted that she could not pay the $379.50 demanded by Community by 4:30 p.m. on July 14, the court clerk entered judgment for possession. We will treat separately whether that sum was the proper amount due. In any event, when a tenant consents to a judgment for possession, *Rule* 4:42–1(d) authorizes the court to

> enter a consent judgment or order without the signatures of all counsel of record and parties *pro se* who have filed a responsive pleading or who have otherwise entered an appearance in the action, *provided the form of judgment or order contains the recital that all parties have in fact consented to the entry of the judgment or order in the form submitted.* (Emphasis supplied).

On the return date of the summary dispossess proceedings, the clerk entered a consent judgment for possession by noting "7–14–95–J" on the court list. No form of judgment or order was ever

entered, as required by the Rule, or at least no such judgment or order has been presented to us.

*Rule* 1:6–8 allows the Special Civil Part clerk to enter judgments in "proceedings which do not require allowance or order of the court." The Legislature contemplated the entry of a judgment for possession in appropriate cases when it granted a grace period of three days before a warrant of removal could issue. The grace period commences "3 days after entry of judgment for possession," *N.J.S.A.* 2A:18–57, and a judge may also grant a hardship stay of up to six months from the entry of judgment. *N.J.S.A.* 2A:42–10.6.

■ We recognize "that the oral pronouncement of a judgment in open court on the record constitutes the jural act and that the entry of the written judgment is merely a ministerial memorialization thereof." *Mahonchak v. Mahonchak,* 189 *N.J.Super.* 253, 256, 459 *A.*2d 1207 (App.Div.1983) (citation omitted). There was no jural act in the present case. Furthermore, a person should be able to read a judgment required by *Rule* 4:42–1 and glean what relief was granted, thereby avoiding future disputes. *J.S. v. D.M.,* 285 *N.J.Super.* 498, 500, 667 *A.*2d 394 (App.Div.1995). All of the foregoing safeguards were breached in the present case.

We are therefore persuaded that the Legislature and *Rule* 4:42–1(d) contemplated the filing of a document designated as a judgment for possession or an order for judgment. That document, pursuant to *Rule* 4:42–1(d), must contain a recital that all parties have consented to both the entry and the form of the judgment or order. Because the clerk's notation in the present case was insufficient, no proper form of judgment was ever entered. For that reason, defendant as the prevailing party below may not "be allowed to rely confidently on the inviolability of [its] judgment." *Hodes v. Oak Flooring Co.,* 43 *N.J.* 359, 362, 204 *A.*2d 705 (1964).

-B-

■ Second, we examine whether defendant understood that payment of the $621.50 within eleven days of July 14 would only

postpone the date of execution for the warrant of removal. Although the trial court found that Harris understood and consented to the entry of a judgment for possession, it did not consider in the weighing process the strong evidence negating a knowing and intelligent understanding of what transpired.

Defendant thought that if she paid in eleven days she would remain in possession. The following colloquy demonstrates the confusing evidence presented at the evidentiary hearing that could reasonably have led Harris to that conclusion.

THE COURT: So they consent to a judgment for possession.

MR. WEISHOFF: They consent to a judgment for possession and then they leave. When we—

THE COURT: And, what's the understanding that they have when they leave?

MR. WEISHOFF: The understanding is that they have up to ten days to post the rent.

THE COURT: And, if they don't do it within the ten days what happens?

MR. WEISHOFF: Then I tell them that the 11th day or thereafter a lockout may occur.

. . .

THE COURT: . . . So, the idea that they leave with is that they have given up—they've given a judgment for possession,—

MR. WEISHOFF: And,—

THE COURT: —and if they don't pay the rent within the 11 days that they're going to be locked out.

MR. WEISHOFF: They can be locked out.

THE COURT: And, if they do pay the rent within the 11 days then what?

MR. WEISHOFF: Then one of two things can happen: either they make a deal with the landlord and the matter is dismissed or they have to apply to the Board for a hardship stay.

THE COURT: Okay.

MR. WEISHOFF: Now, in this particular case this lady apparently came to the Court and applied for a hardship stay.

Harris also testified regarding her understanding of her conversation with Weishoff:

A. What I understood was I didn't have all the money right then and there and I had 11 days with which to pay it, and I did that. That was my understanding.

Q. Well, didn't somebody say that they were getting a judgment for possession?

Q. I didn't know what that was. I didn't know. The way I understood it was I had 11 days within to pay all the money up or I'd have a lockout. That's what I understood.

Q. Oh you did understand that there would be a lockout?

A. If I didn't have the money by 11 days, yes.

Also, regarding the July 25 consent order staying the warrant of removal, Harris testified that:

Q. What did you understand that consent order to mean?

A. Okay. When they explained it to me before I even signed it, I asked questions. I said does that mean that I can still stay. They said, well once your six months is up and you do everything that you're supposed to, you're probation's up, and you can still stay.

Weishoff admitted that generally, if a tenant complies with the terms of the stay as Harris did, the tenant is permitted to remain in possession at the end of the six month stay. Weishoff also admitted that, when a tenant consents to payment, Weishoff utilizes a form of consent agreement promulgated by the Burlington County Special Civil Part, which provides for the dismissal of a judgment for possession upon payment of arrears or the expiration of six months, whichever is earlier. (See Appendix A). In addition, Yanzuk testified that "I tell them [tenants] that they're on a order to—an court order to pay the rent and at the end of the stay they'll go back on their normal lease unless they're notified otherwise by the complex."

The consent agreement utilized in Burlington County generally corroborates Harris's understanding. The form requires the tenant to specify the amount of arrearages in rent owed the landlord, and requires the tenant to consent to a judgment for possession. It allows the tenant to pay the amount due in installments over a period of six months. Significantly, the agreement provides that if the tenant does not default on any installment payment, "the judgment for possession shall be dismissed" at the end of six months.

The trial court did not refer to the standardized consent agreement form used in Burlington County when rendering its decision. For reasons that are not clear from the record, that form was not used in the present case. A "Consent Order Staying Warrant of

Removal," however, was signed by a judge, Weishoff, and defendant. That order stayed execution of the warrant until December 31, 1995, conditioned upon defendant (1) paying the $621.50 owed and paying her future rent on the first of each month, (2) not disturbing the peace and quiet of other neighbors, and (3) not destroying Community's property. The consent order, however, did not inform defendant, as *N.J.S.A.* 2A:42–10.7 provides, that payment of the rent during the stay would not create a new tenancy.

The record of the court proceedings that were conducted on July 14 was available in cassette form. Rather than referring to that tape to determine what advice was given tenants in open court by the judge who presided, the trial court relied on its own recollection of what it thought was the common practice. Contrary to the trial judge's recollection, on July 14 tenants were not informed by the court that they had until 4:30 p.m. to pay the rent to avoid entry of a judgment for possession. Moreover, there is no evidence that either Weishoff or his paralegal made clear to defendant what the phrases "hardship stay," "judgment for possession," or "warrant for removal" meant in her case. Harris was left with the understanding that under the terms of the stay, if she paid the back rent plus the added charges, paid her rent on time, and otherwise complied with the required conditions during the six month stay, she would be allowed to remain in possession thereafter.

Defendant's understanding is consistent with an observation made by this Court in an habitual late payment of rent case. There, the Court stated that in the case of an uninformed tenant, against whom eviction was sought despite the payment of late charges and overdue rent, there was a reasonable basis for the tenant to "assume that the payment of the late charge was sufficient to avoid eviction." *A.P. Dev. Corp. v. Band,* 113 *N.J.* 485, 499, 550 *A.*2d 1220 (1988). Although the landlord concedes that Harris's expectations were consistent with its general practices in Burlington County, it nonetheless sought enforcement of

the warrant for removal because of an undefined problem with defendant's son.

Based on the nearly overwhelming evidence presented, we conclude that the trial court's finding that Harris understood that the warrant of removal would be executed at the end of six months even if she complied with the terms of the stay is "so wholly insupportable as to result in a denial of justice." *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 *N.J.* 474, 483–84, 323 *A.2d* 495 (1974). The trial court's factual findings are unsupported by, and are inconsistent with, the credible evidence. *Ibid.* Consequently, Harris was entitled to relief from any execution of the warrant for removal.

-C-

We turn next to Legal Services' contention that the judgment for possession was invalid because it was based in part on a demand for payment of impermissible charges included in the $379.50 demanded in the complaint and in the additional $242 demanded on July 25. Although Harris failed to question the reasonableness of the $379.50 demanded in the complaint when the consent judgment for possession was entered on July 14, that failure occurred when she was unrepresented by counsel. Moreover, her challenges relate to the jurisdiction of the court in a summary dispossess action to consider charges or fees as additional rent claimed to be part of the basis for eviction. "Absent some direction from [the trial court], ... tenants in [Harris's] circumstances cannot be expected to appreciate what, if any, recourse is available to them, or what constitutes a legally-acceptable method of challenging the reasonableness" of items included as late charges and fees. *447 Associates, supra,* 115 *N.J.* at 533, 559 *A.2d* 1362. Landlords that lease subsidized housing such as that involved here must be charged with the knowledge of the substantial impact a few extra dollars for late charges will have on their tenants' budgets and consequent abilities to avoid eviction for nonpayment of rent. *See Carteret Properties, supra,* 49 *N.J.* at 127–

28, 228 *A*.2d 674. Harris earned only $123 every fifteen days. When fees and charges not authorized by law or the parties' private agreements are included in the arrearages that give rise to a judgment for possession, a *pro se* tenant's consent to judgment for possession represents a mutual mistake. We hold that Harris is not barred from challenging improper charges or fees.

Community's complaint alleged damages totaling $379.50. This amount included $133 for June rent, prior late charges of $31, late charges for June of $30, damages of $17.50, contract costs of $25, court costs of $18, and attorney's fees of $125. Weishoff stated that during court recesses he informs tenants what they owe "including late charges." Therefore, it can be inferred that Weishoff informed Harris that she owed $379.50 during the recess since that was the sum demanded in the complaint.

By virtue of owning and operating a Section 8 housing development, Community is subject to regulations promulgated by the Department of Housing and Urban Development (HUD). 42 *U.S.C.A.* § 1437f(a); 24 *C.F.R.* § 881; Community Lease, section 23. HUD Handbook 4350.3, entitled *Occupancy Requirements of Subsidized Multifamily Housing Programs,* provides that "[a]n owner may not evict a tenant for failure to pay late charges." Section 4–15(d). Instead, "the owner may deduct accrued, unpaid late charges from the tenant's security deposit at the time of move-out if such deduction. is permitted under State and local law." *Ibid.* Thus, under the federal regulations, Community was not permitted to include late charges in the amount it demanded from defendant as additional rent when it sought a judgment for possession.

In addition to late charges, the HUD Handbook addresses the other fees Community sought from Harris. Section 4–16(a)(2) permits a landlord to charge a tenant for "[d]amages to the unit or common areas caused by any household member, pet or visitor." Provision (a)(4) of this same section authorizes a landlord to collect "Court filing, Attorney, and Sheriff Fees ... from tenants who wish to avoid or settle an eviction suit, provided: (a) this is

permitted under local and State law: and (b) these fees are reasonable and do not exceed actual costs incurred."

It is clear that a tenant in New Jersey may contractually agree to pay reasonable legal fees related to an eviction. *Satellite Gateway Communications v. Musi Dining Car Co.*, 110 *N.J.* 280, 286, 540 *A.*2d 1267 (1988); *Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll*, 44 *N.J.* 442, 448, 210 *A.*2d 68 (1965). It is equally clear that New Jersey courts are required to enforce the provisions of a lease in the absence of contravening public policy. *Marini v. Ireland*, 56 *N.J.* 130, 143, 265 *A.*2d 526 (1970). Courts generally uphold provisions in leases calling for the payment of reasonable attorneys' fees. *Mury v. Tublitz*, 151 *N.J.Super.* 39, 44, 376 *A.*2d 547 (App.Div.1977); *Center Grove Assocs. v. Hoerr*, 146 *N.J.Super.* 472, 474, 370 *A.*2d 55 (App.Div.1977). Courts also generally enforce provisions that define rent to include damages in the absence of contravening public policy. *Fargo Realty, Inc. v. Harris*, 173 *N.J.Super.* 262, 266, 414 *A.*2d 256 (App.Div.1980). The written lease, however, must expressly permit a landlord to recover reasonable attorneys' fees and damages in a summary dispossess proceeding before a landlord/tenant court may consider those expenses as additional rent. *Ibid; University Court v. Mahasin*, 166 *N.J.Super.* 551, 553–554, 400 *A.*2d 133 (App.Div. 1979); *Trenton Housing Auth. v. Green*, 118 *N.J.Super.* 544, 545, 289 *A.*2d 264 (App.Div.), *certif. denied*, 61 *N.J.* 159, 293 *A.*2d 389 (1972). Absent a lease or other agreement making damages and attorney fees additional rent, it is unlikely that the parties contemplated the issue.

Section 11(a) and (c) of Community's Lease provide for the recovery of "the cost of all repairs" and "reasonable attorneys' fees and court costs," respectively, when "damage is caused by carelessness, misuse or neglect on the part of the Tenant, his/her family or visitors" and "the court awards these fees and costs." Section 11(c) of the lease also provides that monies due the landlord for damages, reasonable attorney fees, and costs connected with the damage claims "become charges due in addition to

rent." The reasonable interpretation of that language is that the parties contemplated that the reasonable cost of repairing damages to the rental unit would be considered additional rent that may be collected in a summary dispossess proceeding.

Community included in its demands from Harris $125 as attorney fees and $18 in court costs. As noted, Section 4–16(a)(4) of the HUD Handbook permits landlords to collect "[c]ourt filings, attorney and sheriff fees ... from tenants who wish to avoid or settle an eviction suit." The lease, however, does not contain a provision requiring the tenant to pay eviction costs or attorney fees associated with an eviction. Given the continuing shortage of decent subsidized housing, leases such as the one involved here are essentially contracts of adhesion to the extent they are not controlled by applicable law. Such contracts should be strictly enforced against the landlord who prepared them. *Trentacost v. Brussel,* 82 *N.J.* 214, 226, 412 *A.2d* 436 (1980). Because the lease comprised the contractual agreement between the parties, and it does not obligate the tenant to pay legal fees if eviction is sought, the landlord is not entitled to collect the fees associated with eviction as additional rent in the summary dispossess action. *Vineland Shopping Center, supra,* 35 *N.J.* at 470, 173 *A.2d* 270; *Trenton Housing Auth., supra,* 118 *N.J.Super.* at 545, 289 *A.2d* 264.

Nonetheless, the HUD Handbook, the Anti–Eviction Act, *N.J.S.A.* 2A:18–61.1, the Summary Dispossess Act, *N.J.S.A.* 2A:18–55, and *N.J.S.A.* 2A:42–9 all provide that when a tenant, before the entry of final judgment, pays the outstanding rent together with the accrued costs of the proceedings, he or she may have the proceedings dismissed. *Housing Auth. of Wildwood v. Hayward,* 81 *N.J.* 311, 315, 406 *A.2d* 1318 (1979). Those provisions are inapplicable here because Harris did not pay the rent before the judgment for possession was entered. The law in this State is clear that court filing and service of process fees are taxed as part of the costs associated with the entry of judgment. *R.* 4:42–8(a); *R.* 6:6–4. Attorney fees, however, may not be assessed

as part of taxed costs unless permitted by court rule, *R.* 4:42–9(a)(7), *Florczak v. United Jersey Bank,* 248 *N.J.Super.* 651, 653, 591 *A.2d* 1023 (App.Div.1991); statute, *R.* 4:42–9(a)(8); or contractual agreement. *Satellite, supra,* 110 *N.J.* at 285, 540 *A.2d* 1267. "[W]e accept, as do most other courts, the premise of the American Rule that ordinarily society is best served when the parties to litigation each bear their own legal expenses." *Coleman v. Fiore Bros., Inc.,* 113 *N.J.* 594, 596, 552 *A.2d* 141 (1989) (citations omitted). We find no reason in this case to deviate from our previously well-established rule. In the present case, no rule, statute or contractual agreement authorizes the landlord to collect attorney fees in connection with the eviction proceedings. *University Court, supra,* 166 *N.J.Super.* at 553, 400 *A.2d* 133. The only attorney fee permitted here is that associated with collecting the $17.50 for damage to the rental unit. The record, however, does not establish that a reasonable demand for payment of the damages was made prior to filing the complaint.

We hold that of the $379.50 demanded as payment of rent, fees, and charges that had to be paid on July 14 before 4:30 p.m. pursuant to *N.J.S.A.* 2A:18–55 in order to obtain a dismissal of the proceeding, Harris was obligated to pay rent for June of $133, $17.50 in damages, $18 in court costs and $25 "contract cost," which amounts to $193.50. Obviously, the requested overpayment of $186 had a substantial impact on Harris's budget since the overpayment represented more than three weeks of work. There is no question but that the excessive demand for payment had the clear capacity to prejudice whether Harris would have been able to avoid the entry of judgment for possession. She testified that she "didn't have all the money right then and there."

## IV

We now consider whether, under the controlling factual and legal conclusions, the trial court abused its discretion in failing to vacate the judgment for possession under *Morristown v. Little, supra,* 135 *N.J.* 274, 639 *A.2d* 286, and *Rule* 4:50–1(f). In *Little,*

the Morristown Housing Authority ("Authority") filed a complaint against defendant, Cathy Little, for non-payment of rent. 135 *N.J.* at 277, 639 *A.*2d 286. When Little failed to appear at the eviction proceeding, the court entered a default judgment. *Id.* at 278, 639 *A.*2d 286. The Authority then filed a request for a warrant of removal and the warrant was executed. *Ibid.* Although Little offered to pay the rent three days later, the Authority refused to accept it. *Ibid.* Thereafter, *Little* sought to vacate the judgment for possession. *Ibid.*

This Court vacated the judgment for possession pursuant to *Rule* 4:50–1(f). That rule authorizes a court to "relieve a party or the party's legal representative from a final judgment or order for ... any ... reason justifying relief from the operation of the judgment or order." We cautioned in *Little*, however, that "[c]ourts should use *Rule* 4:50–1 sparingly, in exceptional situations; the Rule is designed to provide relief from judgments in situations in which, were it not applied, a grave injustice would occur." 135 *N.J.* at 289, 639 *A.*2d 286. At the same time, we emphasized that *Rule* 4:50–1's boundaries " 'are as expansive as the need to achieve equity and justice.' " *Id.* at 290, 639 *A.*2d 286 (quoting *Palko v. Palko*, 73 *N.J.* 395, 375 *A.*2d 625 (1977) (quoting *Court Inv. Co. v. Perillo*, 48 *N.J.* 334, 341, 225 *A.*2d 352 (1966))). We reasoned that because Little paid all monies due within three days after execution of the warrant of removal, had minor children, and the Authority was a publicly-subsidized housing provider who is "subject to public-policy responsibilities not generally imposed on private landlords," her exceptional circumstances warranted relief under *Rule* 4:50–1(f). *Id.* at 291, 639 *A.*2d 286.

The present case is more compelling than *Little* and requires vacating the judgment for possession. Wrightstown Arms is a Section 8 housing complex constructed under the National Housing Act specifically to provide low income housing. The majority of tenants within the complex receive federal rent subsidies. It is, therefore, governed by federal housing regulations. Furthermore, Harris has two minor children and an evic-

tion would visit the same hardship envisioned in *Little*. She paid the excessively demanded rent and fees within eleven days after judgment for possession had been entered and the warrant for removal had not been executed.

Apart from the factors expressed in *Little*, there are other equitable considerations that also require us to vacate the judgment for possession. First, Harris may have avoided a consent judgment on July 14 if she had been informed that she could pay $193.50 by 4:30 p.m. Instead, Weishoff told her to pay $379.50. To make matters worse, the judge failed to announce that she could pay the rent due by 4:30 p.m. and have the complaint dismissed. Additionally, although Harris appeared *pro se* on July 14, the judge never explained to her, or any other *pro se* tenant, the legal effect of a consent judgment, hardship stay, or warrant for removal.

Finally, Community sought execution of the warrant for removal because of problems with Harris's son, a reason totally unrelated to the good cause for invoking the court's jurisdiction and Harris's understanding of the hardship stay, the nonpayment of rent, or breach of any condition upon which the stay was granted. Weishoff conceded that the real reason for seeking execution of the warrant was "not provable in a court of law." We condemn Community's conduct because it is contrary to our public policy embedded in the Anti–Eviction Act and the Landlord Tenant Anti–Reprisal Law, *N.J.S.A.* 2A:42–10.9. To permit execution of the warrant of removal in this case would permit a landlord to use the Anti–Eviction Act as a tool for retaliation. *Les Gertrude Assocs. v. Walko*, 262 *N.J.Super.* 544, 550, 621 *A.*2d 522 (App.Div.1993). Summary dispossess proceedings based on late payment of rent are "designed to secure performance of the rental obligation." *Vineland Shopping Center, supra*, 35 *N.J.* at 469, 173 *A.*2d 270. They are not intended to be used to evict tenants for unrelated purposes. We hold that the judgment for possession should have been vacated pursuant to *Rule* 4:50–1(f) and *Little*.

## V

We are persuaded by the arguments advanced by Harris and Legal Services that the Burlington County Landlord/Tenant Court eviction procedures are unfair to *pro se* tenants and require some revisions in the areas of consent judgments or orders and information dissemination. We believe it is appropriate to create state-wide procedures for landlord/tenant courts based on this Court's exclusive jurisdiction to regulate the practice and procedures in the various courts. *Winberry v. Salisbury,* 5 *N.J.* 240, 74 *A.2d* 406, *cert. denied,* 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L. Ed.* 638 (1950).

Currently, the rule governing the entry of consent judgments states:

No supporting papers shall be required for the entry of a consent judgment unless the court specifically finds good cause to require the filing of such submissions. Consent judgments may be entered in accordance with this rule at anytime following service of the complaint, whether or not an answer or any other responsive pleading has been served or filed.

[*R.* 4:42–1(d).]

It is clear from that rule that no supporting documentation, such as an affidavit, is required unless the court for good cause or otherwise requires. Summary dispossess actions are unlike other types of cases in which consent judgments are utilized.

As a matter of jurisdictional prerequisite, one of the enumerated statutory "good causes" in the Anti–Eviction Act must be pleaded and established. *Marini, supra,* 56 *N.J.* at 138, 265 *A.*2d 526; *Carteret, supra,* 49 *N.J.* at 125, 228 *A.*2d 674; *Chau v. Cardillo,* 250 *N.J.Super.* 378, 385, 594 *A.*2d 1334 (App.Div.1990). Here, non-payment of rent was the jurisdictional basis alleged. Absent a default or a legally correct judgment, a landlord must prove the statutory good cause by a preponderance of the evidence. "[T]he clear purpose and spirit of the Anti–Eviction Act [is] to ensure that evictions are based on 'reasonable grounds.'" *447 Associates, supra,* 115 *N.J.* at 529, 559 *A.*2d 1362. Although *Marini* predated the Anti–Eviction Act, it is nevertheless representative of the strong public policy of protecting tenants from improper evictions by requiring landlords to establish "good

cause" before the court may assert jurisdiction to remove a tenant. The need for protection is heightened because the majority of tenants facing eviction and consequently involved in consent judgments for possession are unrepresented by counsel.

As we previously noted, judgments may also be entered after a trial and based on a default. Although tenants involved in summary dispossess judgments entered after trial, by default or by consent may be unrepresented by counsel, tenants who enter into consent judgments are at greater risk. If a trial is required, the court generally provides assistance to *pro se* tenants. The good cause basis for a judgment must be established by a preponderance of the evidence. The landlord must prove, in a non-payment of rent case, the amount of unpaid rent that is due and owing. Thus, a tenant's evidence to substantiate a defense or to dispute the reasonableness of fees and charges is also presented.

When a judgment is entered by default based on a tenant's failure to appear, plead, or otherwise defend, *Rule* 6:6–3 requires that an affidavit be filed with the court before the clerk may enter a judgment for possession. In contrast, when a consent judgment for possession is entered pursuant to *Rule* 4:42–1(d), no affidavit or substitute is required. The presence of a tenant who appears, but has not been informed by the court about his or her rights and obligations, provides the court with little or no meaningful assurance that the jurisdictional conditions have been satisfied. As occurred in the present case, *pro se* tenants are unlikely to dispute fees and charges added as additional rent. No doubt many of them believe that by making the payments demanded they can remain in possession. In both instances, an affidavit containing the jurisdictional facts should be required.

 To avoid unfair treatment of *pro se* tenants, the procedures for handling consent judgments or orders should be standardized. We therefore direct the Special Civil Part Practice Committee to propose appropriate out-of-cycle changes to *Rule* 4:42–1(d) and *Rule* 6:6–3(a) to require a landlord to submit an affidavit establishing the jurisdictional good cause required by

*N.J.S.A.* 2A:18–61.1 prior to the entry of a consent judgment or agreement in all non-tried summary dispossession cases. That affidavit should, in addition to stating the jurisdictional facts, state that the charges and fees sought, other than rent, are permitted by applicable federal, state, and local law as well as the lease. In cases in which the landlord is represented by counsel, a certification by counsel concerning the legality of the charges and fees should be required.

By far, the most inappropriate component of Burlington County's eviction procedures is the way that *pro se* tenants obtain information crucial to their case. In the present case, Weishoff and his paralegal played an integral role in informing Harris of the amount due and her legal rights. Although we credit Weishoff for performing a significant quasi-judicial function, that procedure can no longer be tolerated. If left unabated as a substitute for the court's function, it can raise ethical and public policy concerns. Because those conversations between the landlord's lawyer and tenants are not on the record, it is difficult for a court to monitor whether *pro se* tenants have been properly advised of their rights. Furthermore, since the attorney giving the advice generally represents the landlord, there is an apparent conflict of interest.

Additionally, Weishoff's paralegal explained the nature of a hardship stay to Harris. That, too, raises ethical questions despite good intentions. The Advisory Committee on Professional Ethics has stated that a paralegal should not render legal advice, including "the interpretation of the meaning or effect of legal documents." *New Jersey Supreme Court Advisory Committee on Professional Ethics,* Formal Op. 611 (1988).

The better procedure is to have landlord/tenant courts provide information to *pro se* tenants through instructions from the court and written notices explaining court procedures. On the return date, at the beginning of the calendar call and at the end for latecomers, judges presiding over landlord/tenant matters should provide such instructions, which should also be given in Spanish, via a recording, in those counties with a significant

Spanish-speaking population. Because the instructions should be standardized, we refer the matter to the Special Civil Part Practice Committee to draft a set of proposed instructions to be submitted to the Court along with the proposed rule amendments. Those proposed instructions shall incorporate the substantive information required by this opinion. Until the Court receives and acts on the proposals to be submitted by the Special Civil Part Practice Committee, we direct that each county prepare and implement a set of plain-language instructions for tenants that generally convey the following substantive information:

1. When the judge calls the tenancy list, if the landlord is present and the tenant is not, the clerk should enter a default on the file. A judgment may be entered after the landlord has filed an affidavit or certification required by *Rule* 6:6–3 and this opinion. If the tenant is present and the landlord is not, the matter will be dismissed.

2. In non-payment and late payment cases, the tenant has the right "at any time on or before entry of final judgment [to] pay the clerk of the court," *N.J.S.A.* 2A:18–55, or if "at any time before [completion of] the trial" the tenant pays or tenders payment to the landlord, its representative or the court, *N.J.S.A.* 2A:42–9, all the rents and arrears due together with all proper costs, the tenant is entitled to have the complaint dismissed. Those payments must be made by 4:30 p.m. on the return date, unless for good cause the trial court directs otherwise.

3. A landlord is not entitled to evict based upon failure to pay any attorneys' fees, costs or late charges, unless there is a lease provision which states that such fees are collectible as rent. Even if there is such a provision in the lease, the amount due as rent may be limited by a rent control ordinance, or in the case of public or federally-assisted housing, by federal law.

4. A tenant may decide to settle a case with the landlord, but the decision is entirely voluntary.

5. Should the tenant wish to dispute any of the facts alleged in the complaint, including the amount of rent due and owing, the tenant has a right to a trial before a judge. However, if the judge does not have time on the return day, the tenant *must* post with the clerk of the court the overdue rent based on the monthly rate that existed before a dispute arose. That rent, excluding fees or other charges, must be posted with the clerk by 4:30 p.m. and the clerk will schedule the matter for a hearing at a later date. If the rent is not paid by 4:30 p.m., a judgment for possession will be entered.

6. Entry of a judgment for possession means that a tenant is subject to being evicted.

7. If a judgment is entered, a warrant for removal can issue three days later. The warrant for removal can be executed (and the tenant locked out) three days after the warrant has been personally served on the tenant, but not on a weekend

or on a judicial holiday. Also, weekends and holidays are excluded in calculating the number of days before and after a warrant's issuance.

8. If a judgment for possession is entered, by default, consent, or after trial, a tenant has the right to apply to the court for a hardship stay any time up to 10 days after the warrant for removal has been executed. The court may grant or deny the stay. If the court grants such a stay, it can extend the stay up to six months, as long as the tenant pays all arrearages, pays the rent on time, maintains the peace and quiet of the neighborhood, and refrains from damaging the premises. After the stay has expired, the tenant may be evicted by the landlord without any further judicial action.

9. Tenants should be advised of social service agencies that may be able to assist in locating alternative housing. The court should identify social service providers that attend court sessions.

10. Whenever a consent judgment for possession is used, the landlord must submit an affidavit establishing the jurisdictional good cause required by *N.J.S.A.* 2A:18–61.1 *prior* to the entry of a consent judgment or agreement. The affidavit must also state that all fees and charges sought are permitted by applicable federal, state and local law as well as the lease.

We do not require that the instructions be stated precisely in the Court's words. We intend only that the essence of those requirements be captured in the judge's instructions and that user-friendly language be used. In addition to the above, the instructions should include any local information the judge deems appropriate. Courts also should make the instructions available to tenants in the courtroom in writing.

We recognize that the new procedures we require today will, in some instances, place extra demands on our already over-worked trial courts. But a meaningful perpetuation of the State's vital interest in protecting tenants demands no less. If the procedures we adopt today are applied with discernment and care, overcrowded court calendars will not serve as a basis to deny simple justice to those who sometimes need it the most.

## VI

The judgment of the Appellate Division is reversed. The judgment for possession and the warrant of removal are vacated. Community is directed to credit Harris's future rents in the sum of $295 for the overpayment.

# APPENDIX A

———————————————,

### PLAINTIFF,

### V.

———————————————,

### DEFENDANT,

SUPERIOR COURT OF NEW JERSEY

LAW DIVISION–SPECIAL CIVIL

PART

LANDLORD–TENANT

DOCKET No. ——————

CIVIL ACTION

## CONSENT JUDGMENT

It is hereby agreed by and between the parties hereto as follows:

1. The TENANT(S) in the above captioned matter consent(s) to the entry of a judgment of possession in favor of the LANDLORD(S).

2. TENANT(S) hereby acknowledge(s) an indebtedness of $_____ which is due and owing to the LANDLORD and agrees to pay the same as follows:

 a. $_____ on account, receipt whereof is hereby acknowledged.

 b. $_____ per week month and each and every week month not to exceed the period of six months commencing —————— until the full amount of $_____ is paid and satisfied.

3. TENANT(S) further agree(s) to pay the monthly rental of $_____ on the ___ day of each month in addition to the payments on the above balance due and owing.

4. In the event of default on the part of the TENANT(S) a Warrant of Removal shall be issued and executed upon an affidavit by the LANDLORD without further notice to the TENANT(S) and a lockout will be scheduled.

5. Acceptance by the LANDLORD of payments which would constitute a default under this agreement shall not amount to a waiver of any remedy provided hereunder.

6. Upon payment of the arrears, (para.2), or the expiration of 6 months from the entry of the judgment of possession, whichever is earlier, the judgment of possession shall be dismissed.

7. We the undersigned parties having read and understood the terms of this agreement, do hereby consent.

_____

TENANT

_____

LANDLORD

_____

DATE

*For Reversal*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

Opposed—None.