[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE PLAINTIFF'S APPLICATION FOR APPROVAL OF ATTORNEY'S FEES
The plaintiff landlord has submitted an application dated February 25, 2000, that requests the court to approve attorney's fees in the amount of $2,835.00, which counsel claims to have been incurred in connection with a summary process complaint filed on October 21, 1999, because the defendant (who thereafter filed a pro se appearance in the action) had not paid the previous month's rent under the terms of an oral month-to-month lease that commenced on June 1, 1999. The plaintiffs claim, as stated in its brief, is based exclusively upon a written stipulation signed by the parties on December 3, 1999 in the office of the law firm representing the landlord, that was mailed by plaintiffs counsel to the clerk's office and that was thereafter approved by the court in the absence of the parties and without their being canvassed in open court, as would ordinarily have been done in order to ensure that the stipulation had been entered into understandingly and voluntarily by each party.
The landlord's exclusive reliance upon the stipulation of the parties as the basis for its request for reimbursement of the legal fees incurred in this action constitutes an abandonment of its claim based on the written lease that existed between the parties from December 1, 1994, and May 31, 1999, which provided that a reasonable attorney's fee would be paid by the tenant in the event an action was brought to enforce the terms of the lease or the landlord were to secure a judgment against him. It should be noted, however, that in an apparent effort to justify an award of attorney's fees in this action, paragraph 8 of the complaint alleges that the oral month-to-month lease between the parties included "the implied terms, rules and conditions of [the prior written] lease agreement", even though that lease had admittedly expired on May 31, 1999, and despite the fact that attorney's fees are not claimed in the plaintiff sprayer for relief, and that the defendant's answer does not admit that any terms or conditions of the preexisting written lease were carried over into the oral rental agreement between the parties as alleged in the plaintiffs complaint.
The defendant filed a motion on February 15, 2000, to open the stipulated judgment that had been entered by the court on the grounds that he signed the stipulation on December 3rd under duress. He CT Page 5338 stated in his motion that he was told at the courthouse on the previous Friday that if he paid one month's rent and furnished the plaintiff with a letter of protection from the attorney who was handling his claim for damages, he would be able to remain in his apartment, but when he went to the office of the landlord's attorney on the following Monday, he was told that he would have to move by the end of February and that if "I did not sign the papers, I would be evicted in 5 days [and that] I had no choice but to sign the papers no matter what the papers had said."
He also stated in his motion that he said to the attorney and the notary public at the time that the stipulation was signed "that I feel like I have a gun to my head because if I did not sign the papers I would [be] evicted in 5 days [but that if] I did sign the papers I would have to be out by 3/1/00 [and that was] not what we agreed to in the courthouse." He reiterated the foregoing statements at the hearing conducted by the court on February 25, 2000, pursuant to a stipulation signed by the parties on that date in which the parties agreed that the motion to open the judgment would be withdrawn, that the judgment for possession would become final on April 30, 2000, and that the only issue to be resolved by the court would be that of the attorney's fees claimed by the landlord.
In this connection, the court takes judicial notice of the fact that the defendant's motion to open the judgment of December 3rd
states that "[t]he attorney would not tell me how much the fee would be [and that] I feel that I should not have to pay anything because [the parties] came to the same [agreement] that I had spoke about with Vernon Associates before we even went to court [and] I feel that O'Connell, Flaherty and Attmore are trying to take advantage of me because I would be receiving a settlement from a truck accident that I was in." He also stated in response to a question by the court in the course of the hearing that if he had been told by the attorney at the time exactly what the actual amount of the fee would be, he would not have signed the provision of the stipulation that pertained to reimbursement of the landlord for legal fees.
 I
Our Supreme Court has defined a stipulated judgment "as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction." (Emphasis added.)Bryan v. Reynolds, 143 Conn. 456, 460 (1956). The essential nature of such a judgment is that the parties have voluntarily entered into an agreement resolving their dispute, that the court has entered judgment in accordance with its terms, and that it cannot be altered CT Page 5339 or set aside unless the stipulation was obtained by fraud, accident or mistake. (Emphasis added.) Bernet v. Bernet, 56 Conn. App. 661,665-66 (2000).
The term "open court" refers to a judicial proceeding in a court of record convened to do judicial business, with a clerk in attendance "who makes entries of judicial events in a docket, register, or minute book [as well as] a court reporter, who makes a record of all the proceedings." In Re Dolgin Eldert Corp.,286 N.E.2d 228, 229-30 (N.Y. 1972). The Court of Appeals held in that case that the trial court was not "open" within the meaning of a court rule governing stipulated judgments, even assuming that the agreement was definite and intended by the parties to be binding, where it was reached after an informal conference in the judge's chambers in the presence of the court clerk, because, as the Court stated, "[t]o extend [the rule] beyond its meaning to cover purported agreements reached elsewhere is to extend [it] to an uncontrollable area [that] engenders issues of fact and credibility among the parties, the [judge] and the court clerk, a result not only perilous in ascertaining the facts, but erosive of the dignity of a court and its officers." Id. 233.
The Supreme Court of New Jersey has recently reconsidered and revised its procedures for the eviction of tenants for non-payment of rent because it recognized that "[s]ummary dispossess actions are unlike other types of cases in which consent judgments are utilized [for the reason that the] need for protection is heightened because the majority of tenants facing eviction and consequently involved in consent judgments for possession are unrepresented by counsel."Community Realty Management v. Harris, 714 A.2d 282, 295-96 (N.J. 1998). The Court was especially critical of the fact that the court clerk customarily directed tenants who had filed pro se appearances to the office of the landlord's attorney to sign consent orders, particularly since "pro se tenants are unlikely to dispute fees and charges added as additional rent [and because] those conversations between the landlord's lawyer and tenants are not on the record [and] it is difficult for a court to monitor whether pro se tenants have been properly advised of their rights." Id. 288, 296-97).
Under the facts of this case, by reason of plaintiffs counsel's unexplained failure to request a canvass by the court for the protection of the tenant as well as the landlord, the pro se defendant could reasonably have assumed either that the landlord's legal fees were lawful charges that tenants were customarily required to pay in eviction cases or that they were payable under the oral month-to-month lease as alleged in the complaint. In the absence of CT Page 5340 an advisement by the judge in open court of his rights, he could not possibly have known that there was no legal basis for claiming attorney's fees under a lapsed written lease that has been superseded by an oral month-to-month lease. Cravey v. Druggists Co-operative IceCream Co., 19 S.E.2d 845, 847 (Ga.App. 1942).
A stipulated judgment as defined by our Supreme Court; Bryan v.Reynolds, supra, 143 Conn. 460, like any other contract between two parties, may be deemed to be a contract of adhesion where its "most salient feature is that [it is] not subject to the normal bargaining processes of ordinary contracts." Aetna Casualty Surely Co. v.Murphy, 206 Conn. 409, 416 (1988). In the context of the landlord-tenant relationship as it relates to legal fees, a lease agreement has been found to be a contract of adhesion in that it involved shelter, a necessity of life, it was for the excessive benefit and economic advantage of the landlord and it was proposed "on a take-it-or-leave-it basis." Weidman v. Tomaselli, 365 N.Y.S.2d 681,686-89 (County Court 1975), aff'd, 386 N.Y.S.2d 276 (1975).
[F]or a consent judgment to be valid, like a contract, the parties' consent must be knowing and informed [and] there must be the proverbial `meeting of the minds.'" Community Realty Management v.Harris, supra, 714 A.2d 289. Stipulated agreements, including those pertaining to legal fees incurred in eviction proceedings that are entered into by pro se tenants, which are not canvassed in open court, raise ethical and public policy concerns when they are drafted by the landlord's attorney and therefore "should be strictly enforced against the landlord who prepared them [because they] are essentially contracts of adhesion." Id. 293.
The court concludes, therefore, that under these facts and circumstances attorneys for plaintiffs in summary process proceedings who fail to request a canvass by the court do so at their own peril and expose their clients to the risk that the court will declare that such so-called see, e.g., Housing Authority v. Lamothe,225 Conn. 757, 759-61 (1993); or that they are unconscionable as contracts of adhesion.
Accordingly, the plaintiffs application for approval of attorney's fees is denied.
 II
The defendant has opposed the imposition of attorney's fees on the additional ground that he only agreed to assume liability for the legal costs of the action as part of the stipulation because of the CT Page 5341 threat of immediate eviction by the landlord and that it was presented to him "on a take-it-or-leave-it basis." See Weidman v.Tomaselli, supra, 365 N.Y.S.2d 686. Where a party seeks to avoid a contract on the ground of duress, the question in each case is whether the party making that claim was "put in fear by the other party to the transaction for the purpose of obtaining an advantage over him [and was] deprived of the free exercise of his will power, and was such advantage thereby obtained?" McCarthy v. Taniska,84 Conn. 377, 382 (1911).
"To conclude that a stipulated judgment resulted from duress, the finder of fact must determine that the misconduct of one party induced the party seeking to avoid the stipulated judgment to manifest assent thereto, not as an exercise of that party's free will but because that party had no reasonable alternative in light of the circumstances as that party perceived them to be." Jenks v. Jenks,232 Conn. 750, 753 (1995). The basis for the legal concept of duress is the unreality of the apparent consent of one of the parties and the question is whether it was induced by the duress and that he would not otherwise have given his consent. Shanley Fisher, P.C. v.Sisselman, 521 A.2d 872, 878 (N.J.App. Div. 1987). The decisive factor is the wrongful pressure exerted, and the conduct complained of may be oppressive, not necessarily in a legal, but in a moral or equitable sense. Id., 879.
The test for duress is subjective rather than objective because all attendant circumstances must be considered including the relation of the parties, and the "state of mind which would induce an individual to act under duress may be proved by his own direct testimony. Id., 878-89. Our Supreme Court has held that even where the wrongful conduct constituting duress was not contemporaneous with the execution of the stipulated agreement, the evidentiary record to establish "that the defendant's will was overborne by the conduct described by the defendant [was] sufficient to sustain the trial court's finding that the defendant's consent to the stipulated judgment was procured by duress." Jenks v. Jenks, supra, 756.
The tenant's testimony given at the hearing held on February 25th
(which has been summarized earlier in this memorandum) was the only evidence presented by either party and was substantially uncontradicted by counsel for the plaintiff. The court finds that the statements made in his motion to reopen as they relate to counsel fees and reiterated by him in the course of the hearing were credible, and that on December 3rd when he was in the office of the landlord's attorney and was asked to sign the stipulation containing the provision for assuming liability for the costs of suit he had no CT Page 5342 reasonable alternative to the terms drafted and presented to him by the lawyer for the plaintiff.
The court finds, therefore, that the stipulation of December 3, 1999, insofar as it relates to attorney's fees, was not signed by the defendant understandingly and voluntarily, but under compulsion amounting to duress in the legal sense, and that therefore there was not "a free meeting of the minds of both the contracting parties, with a full understanding of their fights and liabilities." SeeMcCarthy v. Taniska, supra, 84 Conn. 382.
For the foregoing reasons, the defendant has sustained his burden of proof on his claim of duress and the plaintiffs application for approval of attorney's fees is denied on that ground in addition to the reasons stated in part I of this decision.
Hammer, J.T.R.