**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4831-15T3

CHRISTOPHER RYAN,

    Plaintiff-Appellant,

v.

THE RIDGE AT BACK BROOK, LLC,

    Defendant-Respondent.

_____

Submitted October 10, 2017 — Decided October 19, 2017

Before Judges Sabatino and Ostrer.

On appeal from Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0447-13.

Avolio & Hanlon, PC, attorneys for appellant (Robert P. Avolio and Catherine M. Brennan, on the briefs).

Wilentz, Goldman & Spitzer, PA, attorneys for respondent (Brian J. Molloy, of counsel and on the brief; Robert L. Selvers, on the brief).

PER CURIAM

    This appeal concerns a plaintiff's challenge to the trial court's award of attorneys' fees to a defendant pursuant to a contractual fee-shifting provision, and the court's pre-trial

denial of certain financial discovery from defendant. Applying the appropriate deferential standard of review to both issues, we affirm.

In January 2002, plaintiff Christopher Ryan joined defendant The Ridge at Back Brook, LLC, a private golf club ("the Club") in Ringoes. In order to join the Club, plaintiff signed a membership agreement and tendered a required membership deposit of $90,000. Pursuant to the terms of the Club's standardized membership agreement, the $90,000 deposit would not be refunded until such time as the Club reached "full membership," which was initially defined at 275 members and which the Club later increased to 295 members.

In July 2003, plaintiff, along with other members, loaned money to the Club in order to raise several million dollars for a new clubhouse. Plaintiff voted in favor of the clubhouse proposal. He signed a promissory note in July 2003, loaning the Club $25,000 for the clubhouse project. The note provides that the loan would not be repaid by the Club until such time as the Club achieved full membership status.

Plaintiff attempted to resign from the Club in February 2010. Because the Club had not yet attained "full membership," defendant placed plaintiff's name on an "intent to resign" list of persons

whose membership deposits would be reimbursed only when and if the Club reached that goal.

Plaintiff filed a complaint against the Club in the Law Division in 2013, attempting to get his deposit back and his loan repaid. He alleged that the Club breached its implied covenant of good faith and fair dealing, by retaining his $90,000 membership deposit, requiring him to pay annual membership fees "in perpetuity[,]" and indefinitely delaying repayment of his $25,000 loan.

Plaintiff's theory of liability essentially was that the Club had little or no business incentive to attain full membership because, if that plateau was reached, the Club would suddenly owe deposits and loan payments back to a large number of members, whom the Club allegedly could not afford to reimburse simultaneously. The Club filed a counterclaim seeking from plaintiff accrued unpaid monthly membership fees.

During the pretrial phase, plaintiff moved to compel certain discovery from the Club, much of which the trial judge, Hon. Edward M. Coleman, granted. However, the judge denied plaintiff's specific request to obtain the internal financial records of the Club, a limited liability company ("LLC"). Judge Coleman found that plaintiff had not shown an adequate basis to overcome the

A-4831-15T3

Club's privacy and proprietary interests in its records. Plaintiff moved for reconsideration, which the judge also denied.

The case was tried before a jury in March and April 2016. After four days of testimony, including expert witnesses for both sides, the jury rendered a unanimous verdict in favor of the Club, rejecting plaintiff's claim of a breach of the implied covenant of good faith. In addition, the jury unanimously granted the Club's counterclaim, in the sum of $47,201.47.

The attachments to the membership agreement include a unilateral fee-shifting provision. This provision specifies that if a member sues the Club and fails to obtain a judgment, that member "shall be liable to the prevailing indemnified parties for all costs and expenses incurred by them in the defense of such suit, including court costs and attorney's fees and expenses through all appellate proceedings." However, there is no similar fee-shifting provision contained in the promissory note.

Following the verdict in its favor, the Club filed a motion seeking counsel fees, expert costs, and disbursements. The certification of services supplied by the Club's law firm did not distinguish between time that its office spent defending plaintiff's claims relating to the membership agreement and time spent defending the claims relating to the promissory note.

4                                                              A-4831-15T3

Plaintiff argued that the Club should not receive any fees from him for defending the promissory note claim, and that the overall fee request should have been reduced by fifty percent. Plaintiff further argued that it is the fault of the Club's law firm that it did not segregate its attorney time entries to specify the legal work done on the "membership agreement issues" as distinguished from the "promissory note issues." Plaintiff further noted that a senior partner litigated the case in tandem with another senior attorney. Plaintiff argued that instead a more junior attorney at the firm should have assisted the senior partner.

On May 16, 2016, Judge Coleman issued a detailed written decision granting the fee request in part, but making substantial reductions amounting in the aggregate to about twenty-seven percent of the overall claimed fees and costs. Among other things, Judge Coleman applied a five percent reduction for work done only on the promissory note defense. Although the judge approved the senior partner's hourly rate, he determined that the defense could have reasonably relied upon a less experienced second attorney, and therefore reduced the second attorney's hourly billing rate. The judge also made other discrete reductions in the attorney time expended.

Now represented by a different law firm, plaintiff appeals the fee award and the pretrial denial of the additional financial discovery. The Club has not cross-appealed the fee reductions that Judge Coleman made.

I.

We first address the counsel fee issues. It is well established that "a party may agree by contract to pay attorneys' fees" to an opposing party under specified terms and conditions. North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 570 (1999) (citing Cmty. Realty Mgmt., Inc. v. Harris, 155 N.J. 212, 234 (1998)). In instances where such fee shifting is controlled by a contractual provision, "courts will strictly construe that provision in light of the general policy disfavoring the award of attorneys' fees." Ibid. (citing McGuire v. City of Jersey City, 125 N.J. 310, 327 (1991)).

Here, plaintiff does not argue that the contractual fee-shifting provision in the Club's membership agreement is void as against public policy. Instead, plaintiff simply attacks as excessive the specific dollar amount of fees and costs the trial court awarded.

Our scope of review of counsel fee awards is well established. Fee determinations by trial courts should be disturbed "only on the rarest occasions, and then only because of a clear abuse of

discretion." <u>Rendine v. Pantzer</u>, 141 <u>N.J.</u> 292, 317 (1995); <u>see also</u> <u>Packard-Bamberger & Co. v. Collier</u>, 167 <u>N.J.</u> 427, 443-44 (2001) (citing the "deferential standard of review" mandated by <u>Rendine</u>). Appellate courts will provide relief from fee-shifting awards in instances where the trial court has misapplied the law or relied upon impermissible grounds. <u>See, e.g.</u>, <u>Walker v. Giuffre</u>, 209 <u>N.J.</u> 124, 148 (2012) (holding that a trial court's failure to comply with the fee-calculation methodology prescribed by <u>Rendine</u>, <u>supra</u>, 141 <u>N.J.</u> at 292, constitutes an abuse of discretion).

We have fully considered all of plaintiff's various arguments for further reducing the counsel fees the trial judge awarded. Having done so, we conclude that plaintiff has failed to establish that the judge abused his discretion or misapplied the governing law in calibrating those fees, including the pertinent factors set forth in <u>R.P.C.</u> 1.5(a).

Judge Coleman carefully considered the attorney hours expended, the tasks involved, the lawyers' billing rates, the complexity of the case, and a host of other considerations. The judge issued a thoughtful and detailed written opinion explaining how he had arrived at the fee award. Having presided over the jury trial and pretrial proceedings in the case, the judge surely had a unique perspective to appreciate the extent and nature of

the legal services provided by the Club's defense counsel. The judge made substantial and reasoned reductions in the hours expended by defense counsel and the hourly rates of the less senior attorney. The judge fairly disallowed certain attorney time for duplicative work and unsuccessful motion practice. We discern no abuse of discretion, nor any error of law, in those reasoned determinations.

Although the fee award here was substantially higher than the amount of damages the Club obtained from the jury on its counterclaim, that simplistic mathematical comparison does not dictate the outcome of a proportionality analysis under R.P.C. 1.5(4) (requiring consideration of "the amount involved and the results obtained"). More was at stake in this case than simply the particular dollar amounts sought by plaintiff and the arrears sought by the Club in its counterclaim. Had the Club lost this case, it faced the risk that other members would likewise demand to have their deposits refunded and their loans to the Club repaid. Moreover, if a jury found that the Club had not acted towards plaintiff in good faith and fairly, reports of such a verdict easily could have harmed the Club's business image and its membership retention and recruitment.

Moreover, plaintiff was represented at trial by two very experienced partners from a large law firm. The Club was justified

8                                                            A-4831-15T3

in retaining an equivalent highly experienced litigation team. This was not, by any means, a routine collection case or garden-variety breach of contract dispute.

We specifically reject plaintiff's request to increase the trial judge's five percent fee reduction, which was based on a rough assessment of the work devoted to defending the loan agreement, which lacked a fee-shifting provision. Plaintiff's core legal theory of the Club's alleged lack of good faith and fair dealing affected both the membership agreement and the promissory note. There was no obvious realistic way for the time records to be segregated between the law firm's defense of the agreement and the defense of the note. The five percent discount adopted by the trial court, although lacking an empirical and numerical basis, was not patently unfair or unreasonable under these discrete circumstances. See, e.g., Litton Industries, Inc. v. IMO Industries, Inc., 200 N.J. 372, 381-83 (2009) (upholding, in a context involving overlapping claims and issues, a ten percent lodestar reduction for a variety of reasons, even though the ten percent was not mathematically tied to a specific numerical reference point).

Consequently, we affirm the trial court's fee award in all respects, without alteration.

The other issue presented on appeal concerns the trial judge's denial of plaintiff's pre-trial request for discovery of the LLC's financial records. This issue also entails a deferential standard of appellate review. "[A]ppellate courts are not to intervene but instead will defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Capital Health Sys. V. Horizon Healthcare Servs., ___ N.J. ___, ___ (2017) (slip op. at 8) (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)).

We recognize, as did Judge Coleman, that the scope of permissible discovery in civil matters is presumptively broad. See Jenkins v. Rainner, 69 N.J. 50, 56 (1976). However, exceptions can apply where there is good cause to curtail such wide-open discovery.

Here, the Club invoked its proprietary interests as a privately-held LLC to keep its financial records confidential. The Supreme Court has recognized that this is a legitimate interest that can outweigh a civil litigant's right to discovery. See, e.g., Herman v. Sunshine Chem. Specialties, Inc., 133 N.J. 329, 344 (1993).

By operating the Club as an LLC rather than as, say, a publicly-traded corporation that issues annual reports to stockholders, the Club's owners and operators elected to maintain a substantial degree of privacy over the Club's internal business affairs.    See N.J.S.A. 42:2C-1 to -94.    The trial judge appropriately weighed that legitimate privacy interest.

The trial judge did not act unreasonably in rejecting plaintiff's demand for discovery of the Club's financial records. The judge fairly drew the line by allowing plaintiff access to Club membership data and marketing materials, but disallowing access to the Club's income statements, balance sheets, cash flow statements and other financial records.    Moreover, during his trial testimony, plaintiff's liability expert did not voice any difficulty in rendering his opinions due to a lack of access to such financial reports.

Thus, we affirm the trial judge's discovery ruling, there being no demonstration that he misapplied his discretion or unjustifiably deprived plaintiff of access to critical information.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4831-15T3