893 A.2d 21 (2006)
383 N.J. Super. 596
Rochelle HODGES and Renita Hodges, Plaintiffs-Appellants,
v.
FEINSTEIN, RAISS, KELIN & BOOKER, LLC, Defendant-Respondent, and
Sasil Corporation, 100 Chadwick Avenue, L.L.C., Alfonso Santos, Sotnas Garden Apartments Corporation and Rosalie C. Scheckel, Esq., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 2005.
Decided March 8, 2006.
*23 Cesar E. Torres, Newark, argued the cause for appellant (Essex Newark Legal Services, attorneys; Mr. Torres, of counsel and on the brief).
Gary D. Gordon, West Orange, argued the cause for respondent (Feinstein, Raiss, Kelin & Booker, attorneys; Mr. Gordon, of counsel and on the brief).
Before Judges STERN, PARKER and LIHOTZ.
The opinion of the court was delivered by
PARKER, J.A.D.
We granted leave to appeal from a portion of an order entered on March 4, 2005 dismissing plaintiffs' claim that the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.A. §§ 1692-1692o, applies to the defendant law firm. "The FDCPA provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." Piper v. Portnoff Law Assocs., 396 F.3d 227, 232 (3d Cir.2005) (citing Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir.2000)). The narrow question before us in this appeal is whether a law firm representing a landlord in a summary dispossess action is a "debt collector" subject to the FDCPA. We find that it is if the firm regularly engages in a practice prosecuting summary dispossess actions.

I
The following is a summary of the facts relevant to this appeal. Plaintiffs Rochelle and Renita Hodges are sisters who reside in separate apartments in the Sotnas Garden Apartments, located in Newark, and operated by defendant Sasil Corporation. Their rent is subsidized by the U.S. Department of Housing and Urban Development (HUD), commonly referred to as Section 8 rental assistance. 42 U.S.C.A. § 1437f. The defendant law firm, Feinstein, Raiss, Kalin & Booker (Feinstein or the firm), regularly represents the Sasil Corporation in landlord/tenant disputes. Defendant Rosalie C. Scheckel, Esq. is a member of the firm who regularly prosecutes eviction proceedings on behalf of Sasil.[1]
Plaintiffs' leases expressly provide that in addition to the monthly rental rate, tenants are obligated to pay at least three forms of "additional rent": late fees, court costs, and attorneys' fees incurred by Sasil. Because the apartments are subsidized by HUD, plaintiffs' legal "rent" obligation is strictly defined by federal statute and regulations as thirty percent of their "adjusted" monthly household income. 42 U.S.C.A. § 1437a(a)(1); 24 C.F.R. 5.601 (2006).
Plaintiff Renita Hodges has a monthly income of $424 for herself and five children. Plaintiff Rochelle Hodges' monthly income is $632 for herself and six children. In accordance with federal regulations, Renita's[2] rent was $55 per month and Rochelle's was $119 as of February 2005.
*24 Plaintiffs acknowledge that they were in arrears on their rent, late fees, attorneys' fees and court costs under the terms of their leases. Feinstein filed and prosecuted summary non-payment of rent eviction complaints seeking to collect from plaintiffs not only outstanding rent, but also late charges and attorneys' fees  which are not rent under federal law, 42 U.S.C.A. § 1437a(a)(1), and for which no judgment of possession may be entered under State law, N.J.S.A. 2A:18-61.1.
Feinstein does not dispute that assertion and acknowledges that "[t]he Summary Dispossess Complaints [Feinstein] filed in the Special Civil Part included rent and other contractual charges for which the Hodges were obligated under their lease agreements." Feinstein maintains, however, that the law does not prohibit a landlord from collecting other charges for which a tenant is obligated in an eviction action: "[t]he law merely states that a landlord [can] not evict a tenant based on those other charges."
In filing the landlord/tenant complaints, Feinstein alleged that total amounts due and owing for legal fees, late fees and rent were "rent." While a subsequent paragraph in each of the complaints itemizes the amounts due and owing by category, the complaints consistently state that the total amount is "rent." Nothing in the complaint advises tenants that they are only required to pay the actual rent to avoid eviction.
For example, on October 31, 2003, Scheckel, on behalf of Feinstein, filed a summary nonpayment of rent eviction (summary dispossess) complaint against Renita in Docket No. LT-37185-03. The matter was listed for trial on December 15, 2003. The complaint alleged:
2. There is due, unpaid and owing from defendant(s) to plaintiff(s) $460.00 for rent as follows:

 6/2003 late fee $ 30.00
 7/2003 late fee $ 30.00
 8/2003 AC $ 20.00
 8/2003 late fee $ 30.00
 9/2003 AC $ 20.00
 9/2003 late fee $ 30.00
 9/2003 rent $ 36.00
 10/2003 rent $ 55.00
 10/2003 late fee $ 30.00
 10/2003 legal fees $179.00

and any additional rent that may be due at the time of hearing.
3. Said rent has not been paid [n]or has possession of the premises been surrendered by defendant(s) to plaintiff(s), but defendant(s) hold(s) over and continue(s) in possession without the consent of the plaintiff(s).
4. The provisions of N.J.S.A. 46:8-27 et seq. have been complied with by the plaintiff(s).
....
Judgment is demanded for possession of the premises together with costs.
The actual rent due to avoid eviction was only $91  not $460 as alleged in the perforatory language of paragraph two. Renita paid $460, believing she had to pay the full amount to avoid eviction.
On April 28, 2004, Scheckel, on behalf of Feinstein, filed another summary dispossess complaint against Renita in Docket No. LT-16116-04. The matter was listed for trial on June 4, 2004. The complaint alleged:
2. There is due, unpaid and owing from defendant(s) to plaintiff(s) $359.00 for rent as follows:

 03/2004 late fees $ 30.00
 03/2004 rent $ 55.00
 04/2004 late fees $ 30.00
 04/2004 rent $ 55.00
 04/2004 legal fees $189.00

and any additional rent that may be due at the time of hearing.
3. Said rent has not been paid [n]or has possession of the premises been surrendered *25 by defendant(s) to plaintiff(s), but defendant(s) hold(s) over and continue(s) in possession without the consent of the plaintiff(s).
4. The provisions of N.J.S.A. 46:8-27 et seq. have been complied with by the plaintiff(s).
....
Judgment is demanded for possession of the premises together with costs.
As of the date the complaint was filed, Renita owed only $110 in rent, not the $359 alleged in paragraph two. Renita certified that on the trial date she went to the courthouse with $250 "to see if they would take that." As of the trial date, Renita owed only $220 in rent.
Rather than answering the trial call, Renita met with the landlord and a Feinstein attorney in the courthouse. She offered to pay the $250 to avoid eviction, but her offer was rejected. Instead, the Feinstein attorney advised that she had to pay $499. The attorney wrote ("$499.00") on the summons, adding the words "includes June."
Under applicable law, payment of $220 plus $29 costs of court (totaling $249) required dismissal of the summary nonpayment of rent eviction complaint. N.J.S.A. 2A:18-55; N.J.S.A. 2A:42-9; Vineland Shopping Ctr., Inc. v. DeMarco, 35 N.J. 459, 469, 173 A.2d 270 (1961); Hous. Auth. v. Taylor, 171 N.J. 580, 593, 796 A.2d 193 (2002). Despite having tendered all rent plus the costs legally due, a judgment of possession was entered against Renita and she was subsequently served with a warrant of removal. She was forced to apply for an emergent order to show cause to stay the eviction. After Renita obtained legal representation, however, the Feinstein firm moved on June 28, 2004 to amend the complaint and dismiss all non-rent charges. The court dismissed the complaint upon Renita's payment of $259, rather than the $499 demanded by the Feinstein attorney on the original trial date.
On April 28, 2004, Scheckel filed a summary dispossess complaint against Rochelle in Docket No. LT-16117-04, which was also listed for trial on June 4, 2004. That complaint alleged:
2. There is due, unpaid and owing from defendant(s) to plaintiff(s) $497.00 for rent as follows:

 02/2004 Legal Fees $147.00
 04/2004 Late Fees $ 30.00
 04/2004 Rent $131.00
 04/2004 Legal Fees $189.00

and any additional rent that may be due at the time of hearing.
3. Said rent has not been paid [n]or has possession of the premises been surrendered by defendant(s) to plaintiff(s), but defendant(s) hold(s) over and continue(s) in possession without the consent of the plaintiff(s).
4. The provisions of N.J.S.A. 46:8-27 et seq. have been complied with by the plaintiff(s).
....
Judgment is demanded for possession of the premises together with costs.
Rochelle owed only $131 rent, not $497 as stated in the perforatory language of paragraph two.
On the trial date, Rochelle appeared with legal representation. She moved to transfer the eviction action to the Law Division to consolidate it with this action, which had been filed that morning. Feinstein then stipulated to dismissal of the late charges and legal fees, leaving only the uncontested rent charges which Rochelle was prepared to pay. Feinstein accepted the $236 tendered by Rochelle, which included $29 in court costs, and indicated on the receipt that Rochelle had a $-0-rent balance through June. The court *26 determined that the nonpayment action had been rendered moot by Feinstein's dismissal of the non-rent charges and Rochelle's payment of the actual rent due plus court costs. The court, therefore, dismissed the complaint rather than transfer it to the Law Division.
On October 28, 2004, Feinstein filed a third summary dispossess complaint against Renita. In addition to $165 in rent, the complaint itemized $619 in non-rent charges, including $249 in late charges and attorneys'/legal fees  the same itemized fees that had been dismissed at the June 28, 2004 hearing in Docket No. T-16116-04. When she received this complaint, Renita "ran around trying to get the money together" and paid $600 before the court date because she was afraid a warrant of removal would issue. Notwithstanding the fact that Renita paid substantially more than the $165 rent due, Feinstein did not dismiss the complaint.
The summonses appended to each of the summary dispossess complaints state,
NOTICE TO TENANT: The purpose of the attached complaint is to permanently remove you and your belongings from the premises. If you want the court to hear your side of the case you must appear in court on this date and time: [] at 8:30 a.m., or the court may rule against you.
The heading on each summons contains a checked line stating, "Nonpayment  Back Rent Claimed" and include the total amount of rent plus the extraneous charges. Nothing in the summonses or complaints indicates that plaintiffs had to pay only the rent to avoid eviction. Between October 2003 and October 2004, plaintiffs were faced with four summary dispossess complaints, all of which were pled in such a manner as to lead plaintiffs to believe they had to pay the full amount of rent plus extraneous charges to avoid eviction.
This complaint was filed in the Law Division on June 4, 2004, the same day both plaintiffs appeared in the Special Civil Part on summary dispossess complaints. On June 24, plaintiffs amended the complaint to add Scheckel as an individual defendant and allege that she and Feinstein violated federal laws and regulations governing Section 8 housing assistance programs; the New Jersey anti-eviction statute, N.J.S.A. 2A:18-61.1a, New Jersey Court Rules and Community Realty Mgmt. v. Harris, 155 N.J. 212, 714 A.2d 282 (1998); the Federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.A. §§ 1692 to 1692o; the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -156; and N.J.S.A. 2A:42-9 of the New Jersey Landlord/Tenant Law.

II
Defendants moved for summary judgment. On March 4, 2005, the motion was granted. In a written opinion, the trial judge correctly found that plaintiffs had standing to pursue their claims and that the issues were not moot by virtue of the dismissal of the summary dispossess complaints because the issues are "`capable of repetition, yet evading review'" (citing Hous. Auth. v. Jackson, 749 F.Supp. 622, 631 (D.N.J.1990)).
The trial judge determined that neither 42 U.S.C. § 1437a(a)(1) nor Community Realty Mgmt. v. Harris, 155 N.J. 212, 714 A.2d 282 (1998), prohibit the acts of which plaintiffs complained. The court explained its reasons for dismissing each of the counts, except count four.[3] On count *27 three, plaintiffs' allegation that defendants violated the FDCPA, the court stated:
Conceding [that] the true purpose of the Act is to provide protection to debtors from harassment, embarrassment, and inconvenience, and to provide consistent State action to protect consumers against debt collection abuse, Plaintiffs urge the court to find that Defendants are "debt collectors" as defined by the Act. The United States Supreme Court has held that the FDCPA's definition of "debt collector," Section 803(6), 15 U.S.C. Sec. 1692a(6), "applies to attorneys who `regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Heintz v. Jenkins, 514 U.S. 291, 299 [115 S.Ct. 1489, 1490, 131 L.Ed.2d 395, 399] (1995).
However, since the attorneys in this case are not "regularly" engaged in the collection of debts, they could not be "debt collectors" as defined by the Act and by Heintz. Id. Here, the attorneys' principal business is not debt collection, but real estate and landlord tenant matters. Plaintiffs, in their complaints, are seeking possession of the premises, not collecting a debt. Summary dispossess proceedings based on late payment of rent are "designed to secure performance of the rental obligation." Vineland Shopping Center, Inc. v. Louis DeMarco, 35 N.J. 459, 469, 173 A.2d 270 (1961). Moreover, the attorneys signed the form on behalf of the firm and their client, the landlord corporation (Sasil), who is asserting his own rights under the lease agreement, not the rights of another acquired party. Direct action by landlord creditors on their own debt  assuming an action for non-payment of rent would be considered collecting a debt  do not fall within the scope of the federal Fair Debt Collection Practices Act. In re Cooper, 253 B.R. 286 (Bankr. N.D.Fl.2000). In addition, there is a myriad of legislation, case law, and court rules dealing with the landlord-tenant relationship that seek to protect the rights of tenants. In the area of landlord/tenant law, when a question arises, the Anti-Eviction Act is liberally construed, and all doubts are resolved in tenant's favor. Carteret Properties v. Variety Donuts, Inc., 49 N.J. 116, 127, 228 A.2d 674 (1967); See 447 Associates v. Miranda, 115 N.J. 522, 529, 559 A.2d 1362 (1989). The court simply does not see a need, and Plaintiff does not make out a case for importing a federal law that is inapplicable to the facts in this case, was not designated to benefit the rights of tenants, and would have an enormous impact on present summary dispossess actions.
In this appeal, plaintiffs focus solely on the FDCPA[4] claim against Feinstein and argue that (1) summary judgment must be reversed because the trial court ignored the plain language and purpose of the FDCPA and Feinstein is a "debt collector" subject to the Act; (2) the trial court erred in finding that a summary dispossess action is not a debt collection; (3) a summary dispossess action is a direct or indirect attempt to collect a debt and, therefore, subject to the FDCPA; and (4) Feinstein's practices violate §§ 1692e and 1692f of the FDCPA.

III
We start our discussion of whether the FDCPA applies with a brief *28 overview of summary dispossess actions. The summary dispossess statute is intended to "afford landlords an expedited procedure to regain possession of the leased premises, thereby avoiding the delays ordinarily associated with common-law ejectment actions." Hous. Auth. v. Little, 135 N.J. 274, 280, 639 A.2d 286 (1994). Possession of the premises is the only available remedy; money damages are not recoverable. Ibid. Unpaid rent is the only basis for summary eviction. "A landlord is not entitled to evict based upon failure to pay any attorneys' fees, costs, or late charges, unless there is a lease provision which states that such fees are collectable as rent." Harris, supra, 155 N.J. at 242, 714 A.2d 282.
The specific purpose of a summary dispossess proceeding is "to secure performance of the rental obligation in actions based on nonpayment of rent." Little, supra, 135 N.J. at 281, 639 A.2d 286 (citing Vineland Shopping Ctr., supra, 35 N.J. at 469, 173 A.2d 270). If the tenant tenders the rent prior to the final judgment in a proceeding based on nonpayment of rent, the summary remedy is no longer available to the landlord. N.J.S.A. 2A:18-55. Procedurally, "[a] summary judgment for possession is enforced by a warrant of removal that cannot issue until three days after the entry of the judgment for possession." Little, supra, 135 N.J. at 281, 639 A.2d 286 (citing N.J.S.A. 2A:18-57). "The warrant of removal, in turn, cannot be executed until three days after its issuance." Ibid.; See N.J.S.A. 2A:42-10.16.
The FDCPA prohibits a "debt collector" from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C.A. § 1692d. The Act applies to lawyers engaged in litigation seeking payment of consumer debts. Heintz, supra., 514 U.S. at 294, 115 S.Ct. at 1490, 131 L.Ed.2d at 399. Indeed, "[a]ttorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA, and their litigation activities must comply with the requirements of the Act." Piper, supra, 396 F.3d at 232.
In Heintz, the Supreme Court addressed the broad issue of "whether the term `debt collector' in the [FDCPA] applies to a lawyer who `regularly,' through litigation, tries to collect consumer debts." 514 U.S. at 292, 115 S.Ct. at 1490, 131 L.Ed.2d at 398. There, the defendant law firm sued on behalf of a bank to collect on a defaulted loan. The Court found:
There are two rather strong reasons for believing that the Act applies to the litigating activities of lawyers. First, the Act defines the "debt collector[s]" to whom it applies as including those who "regularly collect or attempt to collect, directly or indirectly, [consumer] debts owed or due or asserted to be owed or due another." § 1692a(6). In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly "attempts" to "collect" those consumer debts. See, e.g., Black's Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings").

Second, in 1977, Congress enacted an earlier version of this statute, which contained an express exemption for lawyers. That exemption said that the term "debt collector" did not include "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." Pub.L. 95-109, § 803(6)(F), 91 Stat. 874, 875. In 1986, however, Congress repealed this exemption in its entirety, Pub.L. 99-361, 100 Stat. 768, *29 without creating a narrower, litigation-related, exemption to fill the void. Without more, then, one would think that Congress intended that lawyers be subject to the Act whenever they meet the general "debt collector" definition.
[Id. at 294-95, 115 S.Ct. at 1490-91, 131 L.Ed.2d at 399.]
The Court concluded that the FDCPA "applies to attorneys who `regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Id. at 299, 115 S.Ct. at 1493, 131 L.Ed.2d at 402.
In Piper, the defendant law firm was retained by the City of Bethlehem, Pennsylvania, to collect payments for overdue water and sewer obligations. When notified by the City that the Pipers owed $252.71 in delinquent water bills, the law firm sent six letters and made numerous phone calls to them before initiating litigation. The notice provided to the Pipers stated, "Civil Action  In Rem" without further explanation. The law firm filed a writ of execution for a money judgment and ultimately obtained a judgment against the Pipers in the amount of $465.77. After the Pipers' home was scheduled for a sheriff's sale, they filed an action against the law firm alleging that its attempt to collect payment of the water and sewer bills violated the FDCPA and the Pennsylvania Fair Credit Extension Uniformity Act. 396 F.3d at 229-31.
The Pipers' application for a preliminary injunction precluding the law firm from taking any action to facilitate the sheriff's sale was granted. Id. at 231-32. The law firm argued that it was not subject to the FDCPA because it was merely enforcing a lien in an in rem action. The Third Circuit rejected that argument on the ground that "the Pipers' consumption of water created a personal debt that could be collected in any action in assumpsit." Id. at 234. The fact that a lien secured the debt did not change its character. Ibid. The court concluded that the law firm was subject to the FDCPA because (1) the Pipers' obligation "fits the statutory definition of a `debt'" and (2) the law firm's "activities" fit the statutory definition of a "debt collector." Id. at 236.
The FDCPA defines a "debt" as
[A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.
[15 U.S.C.A. § 1692a(5).]
The Act defines "debt collector" as
[A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.
[15 U.S.C.A. § 1692a(6).]

IV
The question before us is whether a summary dispossess action constitutes the collection of a debt such that a law firm "regularly" engaged in the practice of filing summary dispossess actions is subject to the FDCPA.
The trial court found that Feinstein was not a "debt collector" within the meaning of the FDCPA because it was not "regularly" engaged in the collection of debts. The record does not support that finding, however. There was no discovery prior to the summary judgment motion from which a determination could be made as to *30 whether the firm "regularly" engaged in summary dispossess proceedings.
Scheckel's certification in support of defendant's summary judgment motion infers, by virtue of her experience and expertise, that she does, indeed, "regularly" engage in the practice. Scheckel states in her certification that after reviewing Harris, the firm
did not determine that it was improper to include late charges or any other charges classified as additional rent in the Complaint, but that it was improper to require a Section 8 tenant to pay late charges to avoid eviction. Therefore, we determined that it was proper to include late charges and legal fees in addition to basic rent in the summary dispossess Complaints for non-payment if there are contractual charges designated as additional rent under the lease.
Defendant maintains that since summary dispossess actions are in rem, rather than in personam, and the landlord is seeking possession rather than a money judgment against the tenant, an attorney filing a summary dispossess action cannot be a "debt collector" subject to the FDCPA. The Third Circuit rejected a similar argument in Piper, where, as stated above, the complaint sought foreclosure to enforce a lien for outstanding water and sewer bills. 396 F.3d at 236.
A summary dispossess action is an in rem proceeding that, in effect, enforces a lien for outstanding rent. Rather than foreclosure of an ownership interest, the summary dispossess action forecloses the right to possession of the leased premises. In our view, there is virtually no difference between an in rem proceeding for foreclosure on outstanding water and sewer bills and a summary dispossess action for eviction on outstanding rent for purposes of the FDCPA. In both actions, payment of the outstanding debt will allow the debtor to avoid foreclosure or eviction. We hold, therefore, that a summary dispossess action is an action on a "debt" within the meaning of the FDCPA, 15 U.S.C.A. § 1692a(5), and the attorney filing the action is a "debt collector" subject to the FDCPA, 15 U.S.C.A. § 1692a(6), if the attorney "regularly" engages in the practice of filing summary dispossess actions.
Defendant argues that the notice requirements of the FDCPA are inconsistent with the summary dispossess proceeding, which is intended to "afford landlords an expedited procedure to regain possession of leased premises." Little, supra, 135 N.J. at 280, 639 A.2d 286.
Under the FDCPA, a debt collector must, within five days of the initial communication, provide information regarding the debt, the creditor and notice that the debt will be considered valid unless the debtor disputes it within thirty days. The debt collector must also provide a statement that if the debtor notifies the debt collector within thirty days that the debt is disputed, "the debt collector will obtain verification of the debt or a copy of the judgment against the consumer." 15 U.S.C.A. § 1692g(a).
Defendant maintains that the FDCPA notice requirements would have the following effects on a summary dispossess proceeding:
1) The attorney for the landlord must include the information from subsection (a) [of 15 U.S.C. § 1692g] within the non-payment Complaint or in a separate notice to be served upon the tenant after the Complaint.
2) The tenant will be notified in the Summons from the Special Civil Part, Landlord/Tenant Division when his Court date is and that he may lose possession of his apartment on that date. *31 (See Appendix XI-B to the Rules Governing the Courts).
3) Separate from that, the tenant will be notified that he has thirty days to dispute the amount claimed in the Complaint.
4) Thus, if the trial date in the Landlord/Tenant action predates the thirty days, the tenant could be evicted prior to having the opportunity to dispute the debt.
5) On the other hand, the Courts would be compelled to list matters for trial only after the thirty day period has expired, thereby, negating the summary process statutorily mandated in the State of New Jersey.
6) Further, a savvy tenant could wait until the eve of the trial date and provide a written notice to the attorney indicating that he disputes some minimal amount of the rent and charges set forth in the non-payment Complaint. In doing so, the tenant would forestall his eviction as the attorney would be compelled to cease the Summary Dispossess proceeding.
Plaintiffs suggest that the complaint itself should serve as the initial notice and include the information required by the FDCPA. Defendant dismisses that suggestion as "mak[ing] an absurdity of the FDCPA." We disagree.
In our view, the complaint may readily serve as the initial notice and include the information required by the FDCPA. Allowing the tenant thirty days to dispute the amount owed is not unreasonable nor does it defeat the intent of the summary dispossess proceeding to provide prompt relief to the landlord. With respect to trial dates, we note that the four complaints against plaintiffs all had trial dates substantially later than thirty days after the complaints were filed; for example, the complaint filed on October 31, 2003 listed trial for December 15, 2003, and the complaints filed on April 28, 2004 listed trial for June 4, 2004.
We are not persuaded by defendant's argument that "a savvy tenant could wait until the eve of trial" to provide notice that she disputes the amount set forth in the complaint. The "eve of trial" dispute is readily disposed of by filing a verified complaint that clearly distinguishes between the late charges and legal fees and the amount of actual rent the tenant must pay to avoid eviction. A verified complaint would satisfy the requirements of 15 U.S.C.A. § 1692g(a).
We see nothing inconsistent with the FDCPA notice requirements and the intent of a summary dispossess action. Indeed, we consider the enhanced notice requirements as consistent with the intent of the anti-eviction statute and protections afforded to Section 8 tenants in 42 U.S.C.A. § 1437f, and the state statute requiring dismissal of the complaint for eviction upon payment of the actual rent due and owing, regardless of any outstanding non-rent or extraneous charges. N.J.S.A. 2A:42-9.
Our holding herethat the FDCPA applies to attorneys prosecuting summary dispossess actionsis, of course, dependent on a finding that the attorney is a "debt collector" within the definition of 15 U.S.C. § 1692a(6). Such a finding may necessitate discovery to determine whether the attorney "regularly" engages in the practice.
Here, there was no evidence before the trial court upon which to base such a findingunless we consider Scheckel's certification which infers that essentially all of her practice involves prosecuting landlord/tenant complaints. We decline to conclude that Feinstein "regularly" engages in the practice on that basis. *32 We, therefore, reverse the grant of summary judgment on count three of the complaint and remand for further proceedings consistent with this opinion.
Finally, we would be remiss if we did not address the manner in which the complaints against these plaintiffs were drafted and prosecuted. Although this issue is not before us on appeal, we are struck by the fundamental unfairness of a complaint that characterizes as "rent" the additional late charges and legal fees for which the tenant may be contractually liable under the lease but not required to pay to avoid eviction.[5]
We are mindful that this issue has not been briefed or argued, but on its face, the failure to distinguish between the total amount due and the amount required to avoid eviction gives the appearance of a due process violation. "It is beyond question that any procedure which deprives an individual of a property interest must conform to the dictates of the Due Process Clause." Twp. of Montville v. Block 69, Lot 10, 74 N.J. 1, 8, 376 A.2d 909 (1977) (citations omitted). "In New Jersey, as elsewhere, `[t]he essential components of due process are notice and an opportunity to be heard.'" First Resolution Inv. Corp. v. Seker, 171 N.J. 502, 513-14, 795 A.2d 868 (2002) (quoting Mettinger v. Globe Slicing Mach. Co., 153 N.J. 371, 389, 709 A.2d 779 (1998)). "At a minimum, due process requires that a party in a judicial hearing receive `notice defining the issues and an adequate opportunity to prepare and respond.'" H.E.S. v. J.C.S., 175 N.J. 309, 321, 815 A.2d 405 (2003) (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559, 626 A.2d 425 (1993)).
In our view, the complaints served on these plaintiffs do not provide adequate notice because they do not clearly distinguish between the amount the tenant must pay to avoid eviction and the extraneous charges due and owing under the lease. We, therefore, refer this matter to the Supreme Court Civil Practice Committee for consideration of possible amendments to the rules of practice and review of the forms currently included in the appendix to the New Jersey Court Rules.
To summarize our ruling, we reverse the grant of summary judgment dismissing count three of the complaint against Feinstein and remand for further proceedings; and we refer the summary dispossess pleadings to the Civil Practice Committee for review.
Reversed and remanded.
NOTES
[1] The complaint against Rosalie Scheckel, individually, was dismissed by the trial court on the ground that she cannot be held individually liable "for the debts, obligations, or liabilities of the firm" pursuant to N.J.S.A. 42:2B-23. Plaintiffs have not sought leave to appeal that dismissal.
[2] Hereafter we will refer to each plaintiff by her first name for clarity.
[3] Count four, alleging violations of the Consumer Fraud Act, was not dismissed and remains to be litigated. Defendant has not sought leave to cross-appeal that portion of the order.
[4] In their motion for leave to appeal, plaintiffs did not address any of the other counts dismissed by the trial court.
[5] Landlords may certainly pursue those charges and fees in a small claims action after they are dismissed in the summary dispossess proceeding upon payment of the rent and court costs pursuant to N.J.S.A. 2A:42-9.