NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2897-16T1

DEXTER RAMPERSAUD and
SELEEMA RAMPERSAUD,

    Plaintiffs-Respondents,

v.

RONALD A. HOLLINGSWORTH,

    Defendant-Appellant,

and

CARLOS CRAYTON,

    Defendant.

_____

> **APPROVED FOR PUBLICATION**
>
> **November 1, 2018**
>
> **APPELLATE DIVISION**

> Argued October 2, 2018 – Decided November 1, 2018
>
> Before Judges Fisher, Geiger and Firko.
>
> On appeal from Superior Court of New Jersey, Law Division, Special Civil Part, Hudson County, Docket No. LT-015717-16.
>
> Vincent J. D'Elia argued the cause for appellant.
>
> Thomas J. Major argued the cause for respondents (The Major Law Firm LLC, attorneys; Thomas J. Major, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, a now-evicted tenant of a residential apartment, which he sublet to another, argues that only the subtenant, whose conduct generated the tenancy action, could be evicted. In affirming a judgment of possession, we reject the tenant's strained interpretation of the Anti-Eviction Act, N.J.S.A. 2A:18-61.1(c), and conclude that an act of one permits the eviction of all.

Under the Anti-Eviction Act, one of the ways in which a landlord may regain possession of leased premises is by proof of willful or grossly negligent conduct that "caused or allowed destruction, damage or injury to the premises." N.J.S.A. 2A:18-61.1(c). Starting in 1981, a landlord leased a rent-controlled Jersey City apartment, on a month-to-month basis, to defendant Ronald A. Hollingsworth ("the tenant"); that tenancy continued after plaintiffs Dexter and Seleema Rampersaud (collectively, "the landlord") became the owners of the premises.

For an approximate six-month period in 2016, the tenant allowed defendant Carlos Crayton to occupy the premises.[1] In October 2016, Crayton damaged the apartment's rear door, dislodging it from its frame and ruining the surrounding molding. The landlord served a notice to quit and demand for possession; invoking statutory language, the landlord declared that the tenant "willfully or by reason of gross negligence caused or allowed destruction, damage or injury to the premises." N.J.S.A. 2A:18-61.1(c). Two weeks later, the landlord commenced this suit for possession.

After a one-day trial at which the landlord, the tenant, and Crayton testified, the judge rendered a decision in which he concluded the damage was significant, the landlord was entitled to possession, and both tenant and Crayton were to be evicted. A warrant of removal issued, and the tenant failed to obtain a stay.[2] The tenant and Crayton vacated the premises, which have since been relet to another.

---

[1] The tenant disputes that Crayton was a "sub-tenant," but he acknowledges that Crayton paid him rent and only he – and not the landlord – was in privity with Crayton.

[2] Although no order is contained in the appendix, the parties agree that the trial court denied the tenant's application for a stay of the judgment. He did not seek a stay pending appeal from this court.

In appealing, the tenant argues that N.J.S.A. 2A:18-61.1(c) cannot support a judgment against him in these circumstances and that the notice to quit was not sufficiently specific. We find no merit in either argument.[3] The landlord also contends that because the premises have since been leased to another the appeal should be dismissed as moot; we reject this contention because our disposition of the tenant's novel interpretation of the Act is a matter of sufficient public importance and the issue is likely to reoccur yet evade review because of the rapidity with which removal normally follows a judgment of possession. See Zirger v. Gen. Acc. Ins. Co., 144 N.J. 327, 330 (1996); John F. Kennedy Mem'l Hosp. v. Heston, 58 N.J. 576, 579 (1971); see also Sudersan v. Royal, 386 N.J. Super. 246, 251 (App. Div. 2005); Ctr. Ave. Realty, Inc. v. Smith, 264 N.J. Super. 344, 347 (App. Div. 1993).

The relevant facts are undisputed. The tenant does not argue the damage to the premises was too insubstantial to warrant eviction. And there is no dispute that Crayton's conduct was the actual cause of the damage. The question we must decide is purely legal: whether eviction must be limited to the tenant that

_____

[3]  The first point of tenant's brief includes nine subpoints. To the extent we do not address some of his subpoints, it is because we find them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

caused the damage. The tenant would have us respond in the affirmative, but he is mistaken.

The opening phrases of the Anti-Eviction Act (what we will refer to as "the preamble") express a general prohibition on residential evictions in broad, sweeping language: "No lessee or tenant or the assigns, under-tenants or legal representatives of such lessee or tenant may be removed. . . ."  N.J.S.A. 2A:18-61.1. The Act then provides eighteen exceptions to its general ban on evictions; in each of these exceptions, the Legislature labeled the one who triggers the prohibited event as "the person." So, if we put aside the irrelevant provisions falling between the preamble and subsection (c), we are asked to interpret a statute that declares:

> No <u>lessee or tenant or the assigns, under-tenants or legal representatives of such lessee or tenant</u> may be removed by the Superior Court [from their residence] except upon establishment of one of the following grounds as good cause:
>
> . . . .
>
> c. <u>The person</u> has willfully or by reason of gross negligence caused or allowed destruction, damage or injury to the premises.
>
> [N.J.S.A. 2A:18-61.1(c) (emphasis added).]

The tenant's argument presupposes that "the person" referred to in subsection (c) represents a smaller class of individuals than those identified in the preamble. And, by force of that interpretation, he would have us conclude that only the "the person" – the bad actor – may be evicted.

Interpretation of long-winded statutes often provides fodder for any number of "cosmic rationales"[4] about a statute's meaning and scope. Multiple possibilities may be suggested whenever legislation is expressed through such a multi-faceted, single-sentenced preamble that then leaps to numerous, multi-part exceptions. Further uncertainty is added when the actor identified in each exception is labeled by a term other than that utilized at the outset. Although the loose connections and the "play in the joints" of this statute may suggest multiple interpretations, our role, when presented with a statutory ambiguity, is to ascertain the most plausible interpretation that operates in harmony with its context. DiProspero v. Penn, 183 N.J. 477, 492-93 (2005).[5] More general

---

[4]  BILLY JOEL, PRESSURE (Columbia Records 1982).

[5]  We are mindful that the Anti-Eviction Act was enacted in 1974 to address a statewide housing shortage and must be "construed liberally with all doubts construed in favor of the tenant." 224 Jefferson Condo Ass'n v. Paige, 346 N.J. Super. 379, 389 (App. Div. 2002). Liberally construing a statute or construing doubts in one side's favor, however, is not the same as adopting a meaning that is not remotely suggested by its context.

A-2897-16T1

legislative provisions direct that the word "person" should be assigned a broad meaning "unless restricted by the context." N.J.S.A. 1:1-2.

Left only with common sense and the context in which "the person" is found, we are satisfied that the Legislature deliberately used "the person" in N.J.S.A. 2A:18-61.1(c) in order to provide flexibility in the statute's application and enforcement and that the Legislature intended a broad view of who or what might be "the person" whose actions bring about the event that triggers a ground for terminating a tenancy. In short, we conclude that "the person" in this particular context could include those described in the preamble, some smaller subset of that group, or even someone outside the preamble's description.[6]

In any event, this understanding does not end but only begins our analysis because the tenant's chief contention is that the statute somehow limits eviction to "the person" whose conduct triggered N.J.S.A. 2A:18-61.1(c). In a moment we will explain how this argument is without merit, but, even assuming the tenant is correct, there is no doubt that the tenant also fits the definition of "the

---

[6] Our holding is limited to N.J.S.A. 2A:18-61.1(c). The context of other subsections suggest that "the person" may be more limited. See, e.g., N.J.S.A. 2A:18-61.1(o) (permitting eviction when "[t]he person" has been convicted of an offense or, in the case of a juvenile, an act of delinquency, in which case the Legislature recognizes that "the person" may not be the tenant or lessee but someone "harbored" by the tenant or lessee).

A-2897-16T1

person" in this statute. This exception to the Anti-Eviction Act includes not only a circumstance where "the person" has willfully or through gross negligence "caused" damage; it also includes "the person" who "allowed" the damage to occur. Crayton, of course, is a "person" in this context because he indisputably "caused" the damage. But the tenant also fits because he "allowed" the damage by permitting Crayton's use of the premises. The phrasing of the statute – given a sensible reading, Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012) – must necessarily include a circumstance where a tenant allows another into the premises and that other person causes the damage that warrants eviction.

We also are compelled to affirm the judgment of possession even if "the person" in subsection (c) may refer here only to Crayton, the person who physically caused the damage. Crayton triggered a tenancy-ending event notwithstanding what the tenant did or didn't do. The Anti-Eviction Act does not permit the eviction of only blameworthy occupants; it preserves tenancies absent proof of one of the many events described. So, here, the tenant – as an individual described in the preamble as one who may not be evicted – could be evicted if, as described in subsection (c), a person caused damage to the premises. That happened. Crayton caused damage within the meaning of

subsection (c) and that was enough to allow for the tenant's eviction. There is no other sensible reading to be given to subsection (c). Only a judicial rewriting based solely on some novel equitable theory would permit a construction that only Crayton and not the tenant should have been evicted. See DiProspero, 183 N.J. at 492; Craster v. Bd. of Commrs., Newark, 9 N.J. 225, 230 (1952). Stated another way, we find nothing in the Anti-Eviction Act to suggest a court's obligation to ensure that the rights of innocent co-occupiers are preserved and only actual wrongdoers are evicted.[7] The fact that the action is in rem – that is, the action does not assign fault among individuals but instead determines whether a tenancy should end, see Hodges v. Feinstein, Raiss, Kelin & Booker, LLC, 383 N.J. Super. 596, 611 (App. Div. 2006) – demonstrates that a tenancy court need only find an exception to the Anti-Eviction Act as the means for

---

[7] To the extent one might view the outcome as particularly harsh for the tenant, we cannot overlook that the interpretation he suggests would foster less sympathetic results. For example, if the tenant threw a wild party that led to severe damage to the premises, could he avoid eviction by convincing the trial court that he sat quietly while his guests caused all the damage? Or, in this case, if only Crayton was evicted, and the following month the tenant sublet to another person who caused similar damage, would the result again be that only the new subtenant could be evicted? Indeed, does a tenant have the right, as the tenant's thesis suggests, to sublet to a series of unsavory, damage-causing subtenants without providing the landlord with any recourse? These questions cannot in any rational world be answered in the affirmative; this is further evidence that the Legislature could not have intended the interpretation the tenant urges.

9

terminating a tenancy and compelling a return of possession from all occupants to the landlord.

We lastly reject the tenant's argument that the notice to quit was insufficient because it did not identify the cause of the damage. We disagree. The notice describes in sufficient detail the nature of the damage and, although it does not identify with specificity the person who caused the damage, the notice was sent to both the tenant and Crayton. We have at times said that a landlord must strictly comply with the notice requirement and that substantial compliance is not enough, Sacks Realty Co. v. Batch, 248 N.J. Super. 424, 426 (App. Div. 1991); see also Aspep Corp. v. Giuca, 269 N.J. Super. 98, 103 (Law Div. 1993), but that doesn't mean, as in a case like this, a landlord must be put to the task of ascertaining who among multiple occupants was the precise cause of the damage, as the tenant's argument suggests, particularly when, as here, the landlord wasn't in privity with the occupant who caused the damage.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2897-16T1