**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2972-23

FAIRKINGS PARTNERS, LLC,
t/a THE KINGSLEY,

      Plaintiff-Appellant,

v.

ESSENCE L. DANIELS,

      Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

December 8, 2025

APPELLATE DIVISION

Argued October 15, 2025 – Decided December 8, 2025

Before Judges Gilson, Firko, and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law
Division, Essex County, Docket No. LT-001879-24.

Derek D. Reed argued the cause for appellant (Ehrlich,
Petriello, Gudin, Plaza & Reed, PC, attorneys; Derek
D. Reed, Erin Ehrlich Caro, and Matthew Sebera, on
the briefs).

Allison Nolan argued the cause for respondent
(Pashman Stein Walder Hayden, PC, and Volunteer
Lawyers for Justice, attorneys; CJ Griffin, on the brief).

Parth M. Parikh argued the cause for amicus curiae
Seton Hall University School of Law, Center for Social
Justice, Housing Justice Project (Lowenstein Sandler
LLP, attorneys; Natalie J. Kraner and Parth M. Parikh,
on the brief).

The opinion of the court was delivered by

GILSON, P.J.A.D.

Effective March 1, 2020, the Legislature amended the Fair Eviction Notice Act (the Notice Act), N.J.S.A. 2A:42-10.15 to -10.17, to allow tenants who are about to be evicted for non-payment of rent, "to submit a rent payment," and thereby avoid eviction. See N.J.S.A. 2A:42-10.16a (the "Stack Amendment").[1] In this appeal, the issue presented is whether the rent payment must be in the amount set forth in the judgment of possession (JOP) or the amount of rent due at the time the tenant makes the payment. We interpret the Stack Amendment to allow the tenant to pay the amount set forth in the JOP, because the JOP is the judicial determination that allows a landlord to evict a tenant under the Anti-Eviction Act (the A-E Act), N.J.S.A. 2A:18-61.1 to -61.12.

Plaintiff Fairkings Partners, LLC (plaintiff or Fairkings) appeals from a May 9, 2024 order, which held that defendant Essence L. Daniels was required

---

[1] The amendment is known as the Stack Amendment because Senator Brian P. Stack was the primary sponsor of the legislation. The Stack Amendment has two sections: section one is set forth in N.J.S.A. 2A:42-10.16a; and section two is set forth in N.J.S.A. 46:8-49.3. Section two directs landlords to accept a rent payment made in accordance with N.J.S.A. 2A:42-10.16a.

to pay the amount of unpaid rent set forth in the JOP to avoid eviction. Because we agree with the trial court's interpretation of the Stack Amendment, we affirm.

I.

We discern the facts from the record, noting that the material facts related to the issue of statutory interpretation are not in dispute. Plaintiff owns a multi-building residential apartment complex, with ninety-nine rental units. In August 2023, Daniels signed a lease to rent an affordable housing apartment in the complex. The monthly rent was $1,029, and the lease stated that other charges, like certain utilities costs and fees, would be considered part of the rent.

On January 30, 2024, plaintiff filed a summary dispossession action seeking to evict Daniels for non-payment of rent. Plaintiff alleged that as of January 2024, Daniels owed $1,656.74 in unpaid rent, which included certain fees.

The trial was scheduled for March 18, 2024, but Daniels failed to appear. The following day, on March 19, 2024, plaintiff filed a request for the entry of a JOP by default and requested a warrant for Daniels' removal. In a certification filed in support of those applications, plaintiff represented that as of March 18, 2024, Daniels owed $5,482.31 in unpaid rent.

On April 4, 2024, the court entered a JOP by default and listed the amount of unpaid rent due as $5,482.31. That same day, Daniels filed an application seeking relief from the JOP. In her application, Daniels stated that she had sent two checks, each in the amount of $1,600, to plaintiff but those payments had not been applied to her past rent. She also represented that she had $1,500 that she could pay towards her unpaid rent and that she was seeking assistance from a social service organization to help her pay the remaining amount of the unpaid rent. Plaintiff opposed Daniels application for relief and claimed that she now owed $6,836.88 in unpaid rents.

On April 8, 2024, the trial court conducted a hearing on Daniels' post-JOP application. During that hearing, the trial court questioned whether the Stack Amendment requires a tenant to pay the amount listed in the JOP, or that amount plus any rent that accrued afterward, to remain in possession. The trial court appropriately allowed the parties to brief the issue and, therefore, the court stayed the JOP, established a briefing schedule, and directed the parties to appear for further argument on April 29, 2024.

After submitting supplemental papers, the parties appeared before the trial court on April 29, 2024. At the end of the hearing, the court reserved decision. Thereafter, on May 9, 2024, the trial court issued an order and accompanying

4

written opinion. In a thorough and well-reasoned decision, the court construed the Stack Amendment to require Daniels to pay the $5,482.31 specified in the JOP.

The trial court determined that the terms "rent payment" and "all rent due and owing" were not defined in the Stack Amendment or related statutes. The court, therefore, reasoned that it must interpret the Stack Amendment in its entirety and in harmony with the A-E Act. The trial court then interpreted the Stack Amendment as establishing a statutory scheme to allow tenants to make a rent payment that would avoid eviction and result in the dismissal of the JOP. The court reasoned that it would be illogical to construe the Stack Amendment to require a payment different from the amount set forth in the JOP. In that regard, the court determined that using a judicially fixed amount of rent payment would avoid uncertainty and disputes over what amount a tenant needed to pay to avoid eviction.

The court also held that if a landlord believed a tenant owes rent beyond the amount set forth in the JOP, the landlord could institute a new summary dispossession action under the A-E Act. Accordingly, the trial court stated:

> While the operative lease agreement between the parties may ultimately, and separately, oblige the tenant to pay a landlord an additional amount for rent accruing following the [JOP], such amounts are not part of the

> [JOP] and do not form the basis of the lockout for which the Stack Amendment provides relief. The Stack Amendment only requires a tenant to pay the amount of rent judicially determined to be due and owing as identified in the [JOP].

On May 17, 2024, Daniels filed a second post-JOP application representing she had paid plaintiff $5,483. That same day, the trial court held a telephonic conference and informed Daniels where the payment should be tendered. Thereafter, the case was marked as "disposed" in accordance with N.J.S.A. 2A:42-10.16a(b)(2).

Plaintiff now appeals from the May 9, 2024 order.

## II.

On appeal, plaintiff contends that the trial court erred in interpreting the Stack Amendment. It argues that the Stack Amendment should be construed to require tenants to pay the amount of rent due on the day of the payment and should not be limited to the payment of the amount of rent due as judicially determined in the JOP. In support of that argument, plaintiff contends that the trial court erred in its interpretation by disregarding case law and historical procedures governing post-JOP applications. Plaintiff also asserts that the trial court's interpretation is contrary to court rules and will lead to judicial inefficiencies.

Daniels, in contrast, argues that the Stack Amendment establishes a new process that does not depend on the court's equitable powers to grant relief, but instead gives tenants a statutory right to avoid eviction and regain possession of their apartment by paying the amount set forth in the JOP. The Seton Hall University School of Law, Center for Social Justice, Housing Justice Project has filed an amicus curiae brief in support of Daniels' position. The amicus contends that (1) interpreting the Stack Amendment to require tenants to pay more than the amount determined in the JOP would create uncertainty and place an unfair and unreasonable burden on tenants; and (2) plaintiff's interpretation of the Stack Amendment would undermine the court's role in ensuring compliance with the A-E Act.[2]

This appeal requires us to interpret the Stack Amendment. That is a question of statutory interpretation, which we review de novo. Musker v. Suuchi, Inc., 260 N.J. 178, 185 (2025); Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 139 (2015).

---

[2] No party argues that the issue on appeal is moot. We agree that the issue is not moot, and even if it were, it involves a question of public importance that is likely to recur. See State v. Cassidy, 235 N.J. 482, 491 (2018) (quoting State v. Gartland, 149 N.J. 456, 464 (1997)) (explaining that courts "will entertain a case that has become moot when the issue is of significant public importance and is likely to recur").

"When interpreting a statute, [the] aim [is] to effectuate the Legislature's intent, which is best indicated by the statutory text." Keyworth v. CareOne at Madison Ave., 258 N.J. 359, 379 (2024) (citations omitted). "In construing statutory text, 'words and phrases shall be given their generally accepted meaning, unless that meaning is inconsistent with the clear intent of the Legislature or unless the statute provides a different meaning. Words in a statute should not be read in isolation.'" Id. at 379-80 (quoting Shelton v. Restaurant.com, Inc., 214 N.J. 419, 440 (2013)).

Accordingly, courts are to "read the statute[] in [its] entirety and construe 'each part or section . . . in connection with every other part or section to provide a harmonious whole.'" C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459-60 (2014) (omission in original) (quoting State v. Marquez, 202 N.J. 485, 499 (2010)). "If the text's plain meaning is clear and unambiguous, 'we apply the law as written.'" Keyworth, 258 N.J. at 380 (quoting State v. J.V., 242 N.J. 432, 443 (2020)) (internal quotation marks omitted). "Conversely, if the text is ambiguous, 'we may turn to extrinsic evidence, including legislative history to aid our inquiry.'" Ibid. (quoting W.S. v. Hildreth, 252 N.J. 506, 518 (2023)).

It is "[a]n overriding principle of statutory construction" that courts must seek to "harmonize legislative schemes," Richter v. Oakland Bd. of Educ., 246

N.J. 507, 538-39 (2021), "in light of their purposes," Am. Fire & Cas. Co. v. N.J. Div. of Tax'n, 189 N.J. 65, 79-80 (2006) (citing St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 14 (2005)). "Whenever statutory analysis 'involves the [interpretation] of two or more statutes, [courts] seek to harmonize [them], under the assumption that the Legislature was aware of its actions and intended' for related laws 'to work together.'" N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 555 (2012) (third alteration in original) (quoting State ex rel. J.S., 202 N.J. 465, 480 (2010)).

The specific question presented is what amount of rent must tenants pay to avoid eviction under the Stack Amendment. In construing the Stack Amendment, it is helpful to consider its purpose as it relates to the A-E Act.

A. The A-E Act.

Daniels' apartment is covered by the A-E Act because it is a unit within a ninety-nine-unit apartment complex. See N.J.S.A. 2A:18-61.1. A landlord may only evict a tenant from a premise covered by the A-E Act for one of the specified grounds identified in that statute. See Green v. Morgan Props., 215 N.J. 431, 450 (2013).

In enacting the A-E Act, the Legislature explained its purpose: "[t]his Act shall limit the eviction of tenants by landlords to reasonable grounds and provide

that suitable notice shall be given to tenants when an action for eviction is instituted[.]" A.P. Dev. Corp. v. Band, 113 N.J. 485, 492 (1988) (quoting Sponsors' Statement to A. 1586 (Apr. 16, 1974)). Accordingly, "the Act protects residential tenants from unreasonable evictions by setting forth the bases on which and the manner in which a tenant may be evicted." Green, 215 N.J. at 446 (citing N.J.S.A. 2A:18-61.1).

One of the grounds for which a tenant may be evicted is non-payment of rent. N.J.S.A. 2A:18-61.1(a). In this matter, Fairkings, as the landlord, relied on non-payment of rent in seeking Daniels' eviction. In relevant part, the A-E Act states:

> No lessee or tenant . . . may be removed by the Superior Court from any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes . . . except upon establishment of one of the following grounds as good cause:
>
> a. The person fails to pay rent due and owing under the lease whether the same be oral or written . . . .
>
> [N.J.S.A. 2A:18-61.1(a).]

The A-E Act also assists landlords "by providing an efficient and inexpensive way to evict a tenant and regain possession of the leased premises when appropriate." Green, 215 N.J. at 447. Under the A-E Act, a landlord can bring a summary dispossession action, and if the landlord proves that the tenant

10

has failed to pay rents due, the landlord can obtain a JOP. See id. at 447-49. The JOP allows the landlord to evict the tenant because, after a JOP is entered, the landlord can obtain a warrant of removal. See N.J.S.A. 2A:18-57.

Significantly, in issuing the JOP, the court must include the amount of rent that is due and owing. Green, 215 N.J. at 449. "That sum fixes the amount that the tenant may post into court or pay to the landlord in order to prevent the eviction from taking place." Ibid. See also R. 6:3-4(c) (explaining that in summary actions for possession the landlord must use a specific form of complaint and that form has a provision notifying tenants that they can move to dismiss the complaint by paying the rent due on or before the trial date). The amount of rent due as set forth in the JOP "thus protects the tenant by identifying the sum the tenant must pay or post to prevent the eviction." Ibid.

B.    The Stack Amendment.

Enacted in 2019 and effective March 1, 2020, the Stack Amendment amended the Notice Act and gives tenants the right to avoid eviction for non-payment of rent after a landlord has obtained a JOP under the A-E Act. In that regard, section one of the Stack Amendment states:

> a. In an eviction action for nonpayment of rent, pursuant to subsection a. of section 2 of P.L.1974, c. 49 (C.2A:18-61.1), the court shall provide a period of three business days after the date on which a warrant

for removal is posted to the unit or a lockout is executed due to nonpayment of rent, for the tenant to submit a rent payment. A late fee shall not be imposed in excess of the amount set forth in the application for a warrant for removal if all rent due and owing is paid within the three business day period established by this subsection.

b. (1) A landlord shall accept all payments of rent made by a tenant within the three business day period established by subsection a. of this section and upon payment of the rent due and owing, within two business days thereafter, the landlord shall provide the court with written notice that the rent due and owing was paid. A copy of this notice shall be provided to the tenant.

(2) Upon receipt of the written notice as provided in this subsection, the court shall dismiss with prejudice the action for nonpayment of rent.

(3) If the tenant makes a timely payment within the three business day period established by subsection a. of this section, and the landlord fails to provide the court with written notice of the rent payment, the tenant may file a motion to dismiss with prejudice the action for nonpayment of rent upon notice to the landlord.

[N.J.S.A. 2A:42-10.16a.]

Section two of the Stack Amendment amended Title 46 and requires landlords to accept rent payments made in accordance with section one of the Stack Amendment. N.J.S.A. 46:8-49.3. Section two also provides that if a

landlord violates any provision in section one, the landlord could be "subject to a penalty of not more than $500 for each offense." Ibid.

C.    Interpreting the Rent Due Under the Stack Amendment.

The question here concerns interpreting "a rent payment" as used in the Stack Amendment. See N.J.S.A. 2A:42-10.16a. The plain language of the first sentence in the Stack Amendment is clear in stating that the court must allow a tenant three days to submit a rent payment to the landlord to avoid eviction and regain possession of the premises. Thus, the sentence states: "In an eviction action for nonpayment of rent . . . the court shall provide a period of three business days after the date on which a warrant for removal is posted to the unit or a lockout is executed due to nonpayment of rent, for the tenant to submit a rent payment." N.J.S.A. 2A:42-10.16a(a).

The Stack Amendment does not define or identify the amount of the "rent payment" the tenant must submit. Moreover, the term "rent payment" is not a defined term in the A-E Act or related eviction statutes.

Nevertheless, when the Stack Amendment is read in context with the A-E Act, the most logical interpretation is that the Legislature meant the tenant can pay the amount fixed in the JOP. The Stack Amendment expressly links the rent payment to the warrant of removal. See N.J.S.A. 2A:42-10.16a(a). The warrant

of removal can only be issued after a JOP is entered. The JOP, in turn, fixes the rent due as determined by a court.

Moreover, because the Stack Amendment was designed to enable tenants to remain in possession of the premises, it is reasonable to conclude that the "rent payment" refers to the amount specified in the JOP, as this is the sum that originally justified the landlord's repossession. See N.J.S.A. 2A:42-10.16a; N.J.S.A. 2A:18-61.1a(d). Further, as the trial court correctly reasoned, it would not make sense to allow the tenant a three-business-day period after a warrant of removal is posted or a lockout occurs to make a payment, and then not accept that payment because by that time there will be at least three days of additional rent due.

Our interpretation is consistent with the Legislature's remedial purpose in enacting the A-E Act and the Stack Amendment. The New Jersey Supreme Court has explained that the A-E Act was "designed to protect residential tenants against unfair and arbitrary evictions by limiting the bases for their removal." Maglies v. Est. of Guy, 193 N.J. 108, 121 (2007) (quoting 447 Assocs. v. Miranda, 115 N.J. 522, 528 (1989)). Moreover, the Court has recognized that the A-E Act is "remedial legislation" and should "be liberally construed to

14

protect the rights of tenants, with all doubts resolved in favor of the tenant." Cashin v. Bello, 223 N.J. 328, 336 (2015).

Requiring tenants to pay more than the amount set forth in the JOP would create uncertainty and could impose unreasonable financial burdens on residential tenants. The tenant only has three business days to make the payment. Accordingly, the tenant needs to know the exact amount of the payment. If the landlord can demand rent greater than set forth in the JOP, there could be circumstances where tenants are required to pay amounts that include costs and fees beyond what is allowed in a lease. As recognized by the Court, explicitly identifying the amount a tenant must pay to remain in possession allows tenants to better understand their financial obligations and make informed decisions to prevent eviction. In that regard, the Court has remarked:

> [T]he amount due to prevent eviction should be explicitly itemized in the pleadings and should be limited so as not to include any requests or demands for money to be owed, such as future rent. The clarity we recommend . . . will provide tenants with a comprehensive understanding of the debts they owe and will permit them to make informed decisions as they seek to fulfill payment obligations and utilize the [statute's] protections.
>
> [Hodges v. Sasil Corp., 189 N.J. 210, 232 (2007).]

15

See also Green, 215 N.J. at 449; Midland Funding, L.L.C. v. Giambanco, 422 N.J. Super. 301, 312 (App. Div. 2011) (quoting Cmty. Realty Mgmt., Inc. for Wrightstown Arms Apartments v. Harris, 155 N.J. 212, 228 (1998)) (explaining "a person should be able to read a judgment . . . and glean what relief was granted, thereby avoiding future disputes").

D.  Plaintiff's Positions.

Plaintiff challenges the trial court's interpretation of the Stack Amendment, particularly with respect to the term "rent payment."  It argues that when the Legislature used the words "all rent due and owing," it was referring to the amount due at the time of payment.  N.J.S.A. 2A:42-10.16a.

We reject that interpretation because it takes the words out of context.  In subsection (a) of the Stack Amendment, the words "all rent due and owing" are used in connection with "the amount set forth in the application for a warrant for removal[.]"  N.J.S.A. 2A:42-10.16a(a).  Subsection (b)(1) of the Stack Amendment discusses the landlord's obligation to accept the rent payment from the tenant.  It then states that "upon payment of the rent due and owing, within two business days thereafter, the landlord shall provide the court with written notice that the rent due and owing was paid."  N.J.S.A. 2A:42-10.16a(b)(1). Subsection (b)(2) then states: "Upon receipt of the written notice as provided in

this subsection, the court shall dismiss with prejudice the action for nonpayment of rent." N.J.S.A. 2A:42-10.16a(b)(2). Therefore, read in context, the words "rent due and owing" refer to the amount of rent set forth in the JOP, which is the basis for the eviction.

Plaintiff also cites Housing Authority of Morristown v. Little and argues the case supports its interpretation. 135 N.J. 274 (1994). In Little, the Housing Authority of the Town of Morristown (the Authority) filed a summary dispossession action against Little in April 1992 based on her failure to pay rent. Id. at 278. Little failed to appear at the eviction proceeding and the Authority obtained a JOP by default. Ibid. The Authority subsequently filed a request for a warrant of removal, and the warrant was executed. Ibid. Little then offered to pay the Authority the full balance that she owed as of June 1992, but the Authority refused to accept payment, explaining that it did not wish to continue her tenancy. Id. at 278-79.

The trial court in Little vacated the JOP, basing its decision on the equitable grounds set forth in Rule 4:50-1, including Little's payment of "the full amount of rent due." Id. at 279. The Supreme Court of New Jersey agreed, explaining that the trial court had properly considered, among other factors,

17

"that Little, within three days after execution of the warrant of removal, had been able to pay to the Authority the entire amount of rent due."  Id. at 291.

Plaintiff argues that under Little a tenant must pay the full amount of rent due at the time he or she attempts to tender payment to obtain relief.  We are not persuaded because the Stack Amendment establishes a new process that does not depend on the court's equitable powers to grant relief under Little.  Instead, under the Stack Amendment, the Legislature has given tenants a statutory right to regain possession by paying the amount set forth in the JOP.

Finally, plaintiff contends that affirming the trial court's decision conflicts with both the applicable court rules and the doctrine of judicial economy.  It cites to Rule 6:3-4 and a landlord's right to pursue a summary dispossession action to evict a tenant for nonpayment of rent.  Plaintiff argues that, instead of receiving the prompt and final resolution intended by law, upholding the trial court's interpretation of the Stack Amendment will force landlords to file new actions to recover the amount owed between the entry of the JOP and the payment by the tenant.  It contends that this approach undermines the purpose of the summary dispossession procedure and is at odds with the doctrine of judicial economy.

A-2972-23

We disagree because using the amount specified in the JOP promotes judicial economy. If the tenant agrees with the JOP amount and pays it within the statutorily prescribed time, the landlord is required to accept the payment and dismiss the eviction case. This clear process streamlines resolution and minimizes unnecessary disputes. If the tenant cannot pay the JOP amount within three days, the landlord will regain possession. If the tenant can pay the JOP amount, the tenant can continue to occupy the premises, and the landlord can, as usual, pursue a separate action to recover any outstanding rent due. See Hodges v. Feinstein, Raiss, Kelin & Booker, LLC, 383 N.J. Super. 596, 614 n.5 (App. Div. 2006) (explaining "[l]andlords may certainly pursue those charges and fees in a small claims action after they are dismissed in the summary dispossess proceeding upon payment of the rent"). This approach conserves judicial resources, lowers legal costs for all parties, and ensures more prompt adjudication of disputes.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

19                                                                    A-2972-23